HENRY G. DOWD & others *vs.* TOWN OF DOVER & others.

Suffolk. March 9, 1956. — March 30, 1956.

Present: QUA, C.J., RONAN, WILKINS, COUNIHAN, & WHITTEMORE, JJ.

*School and School Committee.*

Regardless of the number of families or householders in a town, it is for the school committee subject to the approval of the department of education when required, and not for the town itself, to determine under G. L. (Ter. Ed.) c. 71, §§ 4, 6, whether to maintain a high school in the town or not to maintain one and to send the pupils of high school age to a high school in another town on a tuition basis.

PETITION, filed in the Superior Court on April 26, 1955.

The case was heard by *Goldberg, J.*

*A. Kenneth Carey,* (*William J. O'Keefe* with him,) for the petitioners.

*Charles C. Cabot,* (*George N. Hurd, Jr.,* with him,) for the respondents.

WILKINS, J. This petition by not less than ten taxable inhabitants of Dover under G. L. (Ter. Ed.) c. 40, § 53, seeks (1) to enjoin the respondent school committee from abolishing teachers' positions and from contracting with the town of Needham to send Dover High School students to Needham on a tuition basis; and (2) to enjoin the respondent town from raising or expending money or incurring obligations to pay such tuition.[1] From a final decree dismissing the petition, the petitioners appealed. The judge made a report of the material facts found by him. The evidence is reported.

The town of Dover formerly maintained a high school in the town for grades 9, 10, 11, and 12. In December, 1953, the school committee voted to adopt the policy of sending

[1] The commissioner of education of the Commonwealth is made a party respondent, but no relief is sought as to him.

students in these four grades to an acceptable high school on a tuition basis beginning in September, 1954. On January 6, 1954, the school committee requested permission of the department of education to send such students to Needham High School on a tuition basis in September, 1954. On February 23, 1954, the board of education voted to approve the request as to grades 10, 11, and 12. At a special town meeting held on May 4, 1954, the voters voted by ballot on the question: "Shall the town maintain within the town of Dover a school for Dover pupils in the ninth to twelfth grades?" Out of 858 votes cast, 448 were in the affirmative, 409 were in the negative, and one was blank. On May 15, 1954, the school committee rescinded its vote. About a year later, on April 14, 1955, the school committee again voted to send high school pupils in grades 9 through 12 to Needham on a tuition basis, and to do so beginning in September, 1955. On May 24, 1955, the board of education voted to reaffirm its permission, first granted on February 23, 1954, to send pupils in grades 10, 11, and 12 to the town of Needham on a tuition basis. On May 27, 1955, the school committee, by majority vote, voted "that grade 9 be eliminated from the vote of April 14, 1955; that grades 10, 11, and 12 be sent to Needham High School starting in September, 1955; that the corresponding grades in Dover be discontinued; and that the Needham School Committee be notified of this action."

"Every town containing, according to the latest census, state or national, five hundred families or householders, shall, unless specifically exempted by the department [of education] and under conditions defined by it, maintain a high school, adequately equipped, which shall be kept by a principal and such assistants as may be needed, of competent ability and good morals, who shall give instruction in such subjects as the school committee considers expedient. . . ." G. L. (Ter. Ed.) c. 71, § 4.

"If a town of less than five hundred families or householders, according to such census, does not maintain a public high school offering four years of instruction, it shall pay the

tuition of any pupil who resides therein and obtains from its school committee a certificate to attend a high school of another town included in the list of high schools approved for this purpose by the department. The department shall approve the high schools which may be attended by such pupils, and it may, for this purpose, approve a public high school in an adjoining state. . . ." G. L. (Ter. Ed.) c. 71, § 6, as amended by St. 1947, c. 679, § 4.

The judge found that, according to the latest national census, held in 1950, Dover contained 478 families or householders; and that the figures on the State census taken in 1955 were not available. He made a finding, contended by the respondents to be without evidential support (a matter we find unnecessary to decide), that in fact Dover contained more than 500 families or householders on April 21, 1955.

In G. L. (Ter. Ed.) c. 71, § 37, it is provided with reference to the school committee: "It shall have general charge of all the public schools, including the evening schools and evening high schools, and of vocational schools and departments when not otherwise provided for. It may determine, subject to this chapter, the number of weeks and the hours during which such schools shall be in session, and may make regulations as to attendance therein."

The judge ruled that the school committee acted within its powers in voting to send the pupils of grades 10, 11, and 12 to the Needham High School and to discontinue these grades in Dover; that the department of education specifically exempted Dover from maintaining those grades; that the vote of the town meeting was of no legal effect; and that the pupils may be sent to Needham High School on a tuition basis whether Dover contains 500 families or householders or less than that number. These rulings were right.

The petitioners' contention is that it is the town itself, and not the school committee, which has the power to determine that the town shall have its own high school. Apparently the petitioners make this contention irrespective of whether at the time of the approval by the department of education there were or were not 500 families or house-

holders according to the latest census. We do not rest our decision on the narrow ground that there were not that many families or householders.

The school committee has "general charge of all the public schools . . . when not otherwise provided for." G. L. (Ter. Ed.) c. 71, § 37. This section has always been broadly construed. *Hammond* v. *Hyde Park*, 195 Mass. 29, 30. *McDevitt* v. *School Committee of Malden*, 298 Mass. 213, 214. *Davis* v. *School Committee of Somerville*, 307 Mass. 354, 362. Under it the committee unquestionably has power to close one of its schools. *Knowles* v. *Boston*, 12 Gray, 339. *Morse* v. *Ashley*, 193 Mass. 294. *Jantzen* v. *School Committee of Chelmsford*, 332 Mass. 175, 178. Notwithstanding the petitioners' argument that the matter of maintaining a high school has never been expressly given to the school committee, we see no reason to limit its power to closing other than high schools.

In *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 330, it was said, "The only supervision which the city council or towns can exercise over the school committee is to vote to close the schools after they have been kept the length of time specified by the law. The school committee may make all reasonable rules and regulations for the government, discipline and management of the schools under their charge. This includes a determination within the bounds set by the statutes of the subjects to be taught and the nature of the schools to be maintained . . . ." It is not a successful disposition of this carefully expressed language of Chief Justice Rugg to say that the case is distinguishable as involving the power of the school committee to establish salaries.

We think that the reference to "town" in G. L. (Ter. Ed.) c. 71, §§ 4, 6, does not serve to bar action by the school committee. Certainly this is not a provision for a referendum, and we do not construe the sections as providing for action by a city council or a town meeting. "Where in the past the Legislature has limited the powers of school committees it has done so in express terms (G. L. [Ter. Ed.] c. 71,

§§ 38–45), and it is to be expected that a radical departure from such previous policy would be expressed in clear language and not left to doubtful implication. *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 332." *Davis* v. *School Committee of Somerville*, 307 Mass. 354, 363. *School Committee of Gloucester* v. *Gloucester*, 324 Mass. 209, 214. In view of the broad powers historically vested in school committees we would have to observe a clear indication of legislative policy before we could reach the conclusion that a school committee with the approval of the department of education cannot exercise the powers with respect to high schools contained in c. 71, §§ 4, 6. See *Duncan* v. *School Committee of Springfield*, 331 Mass. 738, 742.

Two cases relied upon by the petitioners are to be distinguished. In *Cushing* v. *Newburyport*, 10 Met. 508, it was held that a municipality had a corporate right to maintain schools over and above what the Legislature prescribed. There is no indication in the opinion that the school committee did not have its usual discretion as to the operation of such schools. In *Day* v. *Greenfield*, 234 Mass. 31, it was held that, as matter of construction of R. L. c. 42, § 49 (see now G. L. [Ter. Ed.] c. 71, § 68, as appearing in St. 1934, c. 97, § 1), a school committee could not prevent the town from placing a bandstand on a portion of a school lot where it did "not injuriously affect the use of the grounds for school purposes" (page 33).

*Decree affirmed.*