DAVID ALLEN & others[1] *vs.* TOWN OF STERLING
& another.[2]

Worcester.    March 7, 1975. — May 29, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*School and School Committee. Municipal Corporations,* Collective
bargaining. *Contract,* School teacher.

A school committee had authority to agree to the creation of a "sick
    leave bank" for teachers, whereby each teacher would "deposit"
    two days per year and teachers with prolonged illnesses would be
    permitted in certain circumstances and in accordance with certain
    "guidelines" to "draw" upon the "bank." [845-848]

---

[1] Isabel Ford, Eila Wallat and Margaret Amberson, representatives
of the Sterling teachers association.

[2] The Sterling school committee.

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on June 28, 1974.

The suit was reported by *Kaplan*, J.

*Jeffrey M. Freedman* for the plaintiffs.

*Matthew R. McCann*, Special Town Counsel (*Thomas J. Donahue, Jr.*, Town Counsel, with him) for the defendants.

BRAUCHER, J. Pursuant to G. L. c. 149, §§ 178G-178N,[3] the school committee of Sterling (school committee) negotiated a collective bargaining agreement with the Sterling teachers association (association) providing for a "Sick Leave Bank." Town counsel ruled that the provision was invalid, and the school committee voted not to implement it. We are asked to resolve the controversy thus presented, and we hold that the provision is valid.

The case was brought in the county court by representative members of the association, and was reported without decision to the full court by a single justice of this court on the pleadings and a statement of agreed facts, which we summarize. The association, as exclusive bargaining agent in an appropriate bargaining unit of professional employees, entered into the agreement with the school committee in October, 1973, effective as of September 1, 1973, and through August 31, 1975. Article IX of the agreement[4] provided for

---

[3] Superseded by G. L. c. 150E, §§ 4-7, effective July 1, 1974, under St. 1973, c. 1078, §§ 1, 2, as amended by St. 1974, c. 589, § 1.

[4] "Article IX provides:

"*Section A*: A total of fifteen (15) days shall be allowed each teacher in each school year with full pay for absence because of his or her own sickness. This shall be cumulative to one hundred fifty (150) days. For teachers employed less than a full year this will be prorated. The Superintendent may require that the teacher verify, by a doctor's certificate, that the nature of the illness justifies the absence, provided that the Committee pay the doctor's visit.

"*Section B*: A 'Sick Leave Bank' has been established whereby teachers may 'deposit' two (2) days of the sick leave to which they are entitled each year. Teachers who have a protracted illness and who have used up the sick leave to which they are entitled may apply to

fifteen days of paid sick leave for each teacher each year, cumulative to 150 days.   Each teacher could "deposit" two days each year in the "Sick Leave Bank."   "Teachers who have a protracted illness and who have used up the sick leave to which they are entitled may apply to draw on the bank."   Guidelines are to be prepared by a committee composed of equal numbers of persons designated by the superintendent and by the association.

The superintendent and the association prepared "Proposed Guidelines," providing that all decisions concerning withdrawals from the "Bank" will be made by a committee consisting of a member of the school committee, a member of the association, and a member of the administration.   Withdrawals are to be made "only in cases of serious or prolonged illness."   Application must be made in writing, "accompanied by a detailed medical statement by the attending physician." Before withdrawal a teacher must have used up all accumulated sick leave plus personal leave.   Misuse or abuse may result in termination of membership in the "Bank."

The school committee sought the opinion of town counsel as to the legality of the "Bank," and honored his opinion that it was invalid.   During the school year 1973-1974 no teacher in the town would have needed to draw from the "Bank."   There were fifty-two teachers in the town.

1. The defendants begin their argument on the false premise that towns have only those powers expressly

---

draw on the bank.   The operations of the bank and withdrawals therefrom shall be carried out in accordance with guidelines prepared by a committee composed of equal numbers of persons designated by the Superintendent and by the Association.   The Association will submit a statement of deposits to the Superintendent by October 1.

"*Section C*:   Before October 30 of the school year, a statement of unused sick leave shall be issued to each teacher in writing and a statement of the total number of days in the 'Sick Leave Bank' will be forwarded to the President of the Association."

conferred by statute or "necessarily" implied, and that statutes conferring powers on towns are to be strictly construed. On the contrary, under the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, § 6, towns may by by-law exercise any power or function which the general court has power to confer on them, subject to the Constitution and laws and to exceptions stated in § 7. Moreover, school committees have long had "broad powers, important duties and large discretion." *Leonard* v. *School Comm. of Springfield,* 241 Mass. 325, 329 (1922). Their power to contract with school teachers as to wages, hours and other conditions of employment is "complete and exclusive." *Kerrigan* v. *Boston,* 361 Mass. 24, 26-27 (1972).

2. The validity of paid sick leave for teachers was established long ago. *Averell* v. *Newburyport,* 241 Mass. 333, 334-335 (1922). Cf. *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105, 107 (1971). As to other municipal employees, see G. L. c. 40, § 21A; G. L. c. 41, § 111B. On occasion, however, we have held particular provisions for sick leave unreasonably generous and therefore invalid. *Whittaker* v. *Salem,* 216 Mass. 483, 485 (1914) (entire period of service). *Quinlan* v. *Cambridge,* 320 Mass. 124, 127-131 (1946) (twelve weeks a year).

The "Sick Leave Bank" is to be viewed as "part of the over-all package of services and benefits worked out by the parties pursuant to collective bargaining and embodied in the contract." *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg, supra.* So viewed, the provisions here in issue are not unreasonably generous. A school committee can use such a provision as a reason for holding down the duration of annual sick leave and the maximum individual accumulation. The "Bank" scheme offers some incentive not to use available sick leave, and this tends to counteract the unfortunate tendency which sometimes appears for sickness to rise to the level of

available sick leave. Moreover, the "Bank" does not restrict the right of the school committee to terminate a teacher's employment. G. L. c. 71, § 42. We conclude that the school committee was authorized to agree to the provision as one of the terms and conditions of employment. *Syracuse Teachers Assn. Inc.* v. *Board of Educ., Syracuse City Sch. Dist.* 42 App. Div. 2d (N. Y.) 73 (1973), affd. 35 N. Y. 2d 743 (1974). *Weest* v. *School Commrs. of Indianapolis,* Ind. App. (1974).[a]

3. The defendants contend that the provision involves an unconstitutional delegation of governmental responsibility in the preparation of the "Proposed Guidelines" and in the execution of the guidelines. We do not read the agreement as delegating the power to adopt guidelines; the guidelines are to be "prepared" by the committee provided for in the agreement, for adoption by the school committee. Since the guidelines have not been adopted, we do not pass on them. As to delegation in such a situation, cf. *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 504 (1970); *Chief of Police of Westford* v. *Westford,* 365 Mass. 526, 533 (1974).

4. A judgment is to be entered by the single justice declaring that section B of Article IX of the October, 1973, agreement is valid, and that the school committee is required to comply with that section and to adopt guidelines for, establish and maintain a "Sick Leave Bank" pursuant to the agreement.

*So ordered.*