SCHOOL COMMITTEE OF DANVERS *vs.* ANNE TYMAN
& others.[1]

Essex.    December 8, 1976. — March 8, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Arbitration. School and School Committee. Contract,* Collective bar-
gaining contract. *Municipal Corporations,* Collective bargaining.
*Labor.*

Arbitration of a grievance asserted on behalf of a nontenured teacher
    pursuant to a collective bargaining agreement between a school com-
    mittee and a teachers' association should not have been stayed on
    the ground that the school committee had retained the sole authority
    to make tenure decisions where there was an issue as to whether
    the school committee had followed evaluation procedures required
    by the agreement before determining not to rehire the teacher and
    where no conflict had arisen between the consequences of the ar-
    bitration proceedings and the nondelegable authority of the com-
    mittee. [109-115]

CIVIL ACTION commenced in the Superior Court on Sep-
tember 9, 1974.

The case was heard by *Travers,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Brian A. Riley (Charles M. Healey, III,* with him) for
the defendants.

*Paul L. Kenny,* Town Counsel, for the plaintiff.

---

[1] The other defendants are the Danvers Teachers' Association, the
collective bargaining representative of the Danvers schoolteachers and
two representatives of the association, and the Department of Labor
and Industries Board of Conciliation and Arbitration of the Common-
wealth. That board has taken no part in this proceeding. References
to the defendants will be to Tyman and the Danvers Teachers' Asso-
ciation.

School Committee of Danvers v. Tyman.

WILKINS, J. The defendants appeal from an order, under G. L. c. 150C, § 2 (b), granting a stay of arbitration concerning certain grievances asserted on behalf of the defendant Tyman, a nontenured teacher in the Danvers school system. An appeal from such an order is authorized by G. L. c. 150C, § 16 (2). See *School Comm. of Agawam* v. *Agawam Educ. Ass'n,* 371 Mass. 845, 846 (1977). We conclude that arbitration should not have been stayed and that an order should be entered under G. L. c. 150C, § 2 (b), directing the parties to proceed to arbitration.

The basic circumstances are not in dispute. The Danvers Teachers' Association (association) and the Danvers school committee (school committee) entered into a collective bargaining agreement for the period from September 1, 1973, to June 30, 1975. The agreement provided that a grievance, as defined therein,[2] could be processed through four levels, the last of which called for final and binding arbitration. The agreement also set forth certain procedures to be followed in the evaluation of the work performance of a teacher. Those procedures included notice to a teacher of any material placed in his or her file which was derogatory to the teacher's conduct, service, character or personality; an opportunity to review that material; and a right to reply in writing. Each teacher was entitled to be advised promptly in detail of any complaints about him or her made to the school administration or to the school committee. The agreement contained a provision that "[t]he Committee retains its statutory right to rehire or not to rehire non-tenure teachers."

The defendant Tyman was hired as a teacher of English for the school year commencing September, 1971. In the early part of April, 1974, during the third year of her employment and, hence, during the last possible year of non-

---

[2] Article III A of the agreement defined a "grievance" as follows: "A 'grievance' is a claim based upon an event or condition which affects the wages, hours, or conditions of employment of a teacher or group of teachers and/or the interpretation, meaning, or application of any of the provisions of this Agreement or any subsequent agreement entered into pursuant to this Agreement."

tenured status (G. L. c. 71, § 41), the school committee voted not to rehire Tyman and on April 12, 1974, notified her in writing of its decision. A grievance was filed in May which alleged a failure to follow appropriate evaluation procedures, inadequate classroom observations and evaluations, and discrimination. The defendants did not seek explicitly to arbitrate the school committee's decision not to reappoint Tyman to a fourth year as a teacher in the school system. Arbitration was requested by the association in July, and, after a continuance, a hearing was scheduled for September 10, 1974.

On September 9, 1974, the school committee filed a complaint in the Superior Court seeking, in effect, an order granting a stay of the arbitration proceeding. It is clear from the complaint that the school committee's argument was that arbitration of the grievance was barred because, under G. L. c. 71, § 41, the school committee had an absolute power to pass on the question whether a nontenured teacher's contract should be renewed. On that same day, the matter was argued by counsel and, on the basis of the complaint and the arguments of counsel, the judge entered an order granting a stay of arbitration because "the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration." The defendants have appealed. On our own motion, we transferred the case here for decision.[3]

---

[3] The school committee objects to the inclusion in the record of an answer which the judge permitted to be filed over a year after the order staying arbitration was entered. That answer expanded on the grounds of the grievance asserted on behalf of Tyman. Because the judge allowed the late filing of the answer, we assume that the grounds asserted were matters which were before him when he ordered the stay of arbitration or, at least, he regarded the matters raised in the answer to be of no consequence to his original order. Our decision does not depend, however, on the answer being a part of the record on appeal because the nature of the grievance is sufficiently clear from the complaint itself.

General Laws c. 150C, § 2 (b), inserted by St. 1959, c. 546, § 1, states that an application for a stay "shall be forthwith and summarily determined . . . ." The judge and the parties should exercise care, however, to assure that an adequate record is made of the material which was before the judge in order that any appeal from an order granting

The fundamental issue in this case arises from the tension between (1) the terms of the lawfully authorized collective bargaining agreement between the association and the school committee providing for final and binding arbitration (see G. L. c. 150E, § 8), and (2) the traditional authority of school committees in the matter of contract renewal resulting in tenure for teachers. The Legislature could have, but has not, resolved this dispute by stating explicitly, as it has in other instances (see G. L. c. 150E, § 7), whether and how far the agreement may override existing law. Our function in this case is to assess the Legislature's over-all intention in light of (1) its apparent grant of full authority to school committees to agree to arbitration of "any dispute concerning the interpretation or application of ... [a collective bargaining] agreement" (G. L. c. 150E, § 8, inserted by St. 1973, c. 1078, § 2), and (2) the continuing, apparently unfettered, statutory authority of a school committee to determine that a non-tenured teacher "is not to be employed for the following school year." G. L. c. 71, § 41, as amended through St. 1973, c. 847, § 6.

Views of various State courts have not been consistent concerning the extent to which, if at all, a school committee may assert an absolute authority to grant or deny tenure to probationary teachers in opposition to a claim of arbitrability of questions relating to nonrenewal of the teacher's contract. See Note, Public Sector Grievance Procedures, Due Process, and the Duty of Fair Representation, 89 Harv. L. Rev. 752, 757 n.28 (1976). Because traditions and statutory provisions vary among States, the divergence of opinion is understandable.

In some States, the courts have held that a probationary employee may be discharged as a matter of discretion and that resort to contractual grievance procedures is imper-

a stay may be heard properly. See Mass. R. A. P. 8 (c), 365 Mass. 849 (1974), for one method of establishing a proper record in such a situation. We view the judge's action in allowing the defendants' motion to file an answer as a means of developing an adequate appellate record in this case.

missible. See, e.g., *Van Gorder* v. *Matanuska-Susitna Borough School Dist.*, 513 P.2d 1094, 1096 (Alas. 1973). In Illinois, a school board's duties in appointing teachers have been held to be nondelegable, and the failure to follow contractual evaluation procedures does not restrict a school board's statutory rights and powers to decide in its discretion not to renew a probationary teacher's contract. *Illinois Educ. Ass'n Local Community High School Dist. 218* v. *Board of Educ. of School Dist. 218, Cook County*, 62 Ill. 2d 127, 130-131 (1975). *Wesclin Educ. Ass'n* v. *Board of Educ. of Wesclin Community Unit School Dist.*, 30 Ill. App. 3d 67, 77 (1975). Thus, in Illinois an arbitrator may not award an employment contract as a remedy for the violation of evaluation procedures contained in a collective bargaining agreement. *Trustees of Junior College Dist. No. 508, County of Cook* v. *Cook County College Teachers Union, Local 1600*, 62 Ill. 2d 470, 476 (1976).

In Michigan, on the other hand, the question whether a school board agreed to arbitrate the nonrenewal of a probationary teacher's contract has been left to determination by an arbitrator. *Kaleva-Norman-Dickson School Dist. No. 6* v. *Kaleva-Norman-Dickson School Teachers' Ass'n*, 393 Mich. 583, 595 (1975). In that opinion, no particular consideration was given to any argument that the school board had no authority to delegate to an arbitrator the question of the propriety of its failure to renew a nontenured teacher's contract.

In New York, where the tenure statute is somewhat similar to ours, the Court of Appeals recently has taken an intermediate view of the status of the terms of a collective bargaining agreement in relation to the powers of a school board to determine whether a nontenured teacher's contract will be renewed. In *Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County* v. *Bellmore-Merrick United Secondary Teachers, Inc.*, 39 N.Y.2d 167 (1976), the court had to decide whether an arbitrator properly could order the temporary reinstatement of a probationary teacher as a remedy for breach of certain procedural guaranties contained in a collective bargaining

agreement. The teacher sought arbitration of a grievance because, contrary to the terms of the collective bargaining agreement, she was not apprised of certain parental complaints and was not afforded the opportunity to refute them. The school board there, as in this case, responded in effect that it had the absolute power to terminate the services of the teacher. The arbitrator concluded that the agreement had been violated and ruled that an appropriate remedy was reinstatement, without tenure, for a reasonable period sufficient to enable the school board to reevaluate the teacher in accordance with the prescribed procedures. The Court of Appeals upheld the arbitrator's award. That court recognized that the arbitrator could not grant tenure to the teacher because that was a power under the sole control of the board.[4] However, it viewed evaluation procedures guaranteed in a collective bargaining agreement as independent of the school board's ultimate authority to pass on nonrenewal. Those procedures could be followed without infringing on the school board's prerogative. See *Cohoes City School Dist.* v. *Cohoes Teachers Ass'n,* 40 N.Y.2d 774, 778 (1976); *Legislative Conference of the City Univ. of N.Y.* v. *Board of Higher Educ. of the City of N.Y.* 31 N.Y.2d 926, 928, aff'g 38 App. Div. 2d 478, 482 (1972).

Arbitration should not have been stayed in this case. Judicial intervention is not warranted where no conflict has arisen between the consequences of the arbitration proceedings called for in the collective bargaining agreement and any nondelegable authority of the school committee.

We accept the school committee's argument that, against its will, it may not delegate to an arbitrator its authority to make decisions concerning tenure. The nondelegable authority of an incumbent school committee in the appointment and reappointment of academic personnel has a long tradition. See G. L. c. 71, §§ 37, 38; *School*

---

[4] See that court's even more recent opinion in *Cohoes City School Dist.* v. *Cohoes Teachers Ass'n,* 40 N.Y.2d 774 (1976) (five to two decision), affirming that conclusion.

*Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 689
(1976); *DeCanio* v. *School Comm. of Boston*, 358 Mass.
116, 120 (1970), appeal dismissed and cert. denied sub
nom. *Fenton* v. *School Comm. of Boston*, 401 U.S. 929
(1971); *Sullivan* v. *School Comm. of Revere*, 348 Mass.
162, 165 (1964); *Murphy* v. *Cambridge*, 342 Mass. 339, 341
(1961); *Demers* v. *School Comm. of Worcester*, 329 Mass.
370, 373 (1952); *O'Brien* v. *Pittsfield*, 316 Mass. 283, 285-
286 (1944); *Davis* v. *School Comm. of Somerville*, 307
Mass. 354, 362-363 (1940); *Leonard* v. *School Comm. of
Springfield*, 241 Mass. 325, 329-330 (1922); *Watson* v.
*Cambridge*, 157 Mass. 561, 563 (1893); *Batchelder* v.
*Salem*, 4 Cush. 599, 601-602 (1849). Although the Legisla-
ture has granted procedural safeguards to nontenured
teachers who have been teaching for more than ninety
days, where they are threatened with dismissal during a
school year (G. L. c. 71, § 42), no such protection has been
granted to such teachers when the subject of renewal or
nonrenewal of their contracts 'is involved. Indeed, the
Legislature has expressly indicated that the procedural
safeguards applicable to dismissal of nontenured teachers
do not apply to the renewal of their contracts. St. 1970,
c. 388, § 2. It is true that the tenure statute (G. L. c. 71,
§ 41) has the effect of reducing the traditional, wide dis-
cretion of school committees by granting protection to
teachers who have acquired tenure. It is also true that by
failure to send a timely notice a teacher may acquire
tenure without a conscious, affirmative act by a school
committee. See *Bonar* v. *Boston*, 369 Mass. 579, 582-583,
585 (1976); G. L. c. 71, § 41. But the fact remains that a
school committee's authority to determine questions of
contract renewal and tenure during the first three years
of a teacher's term of employment has been left unchanged
by legislation. We do not find in legislative authorization
for schoolteachers to bargain collectively concerning
"wages, hours, and other terms and conditions of employ-
ment" (G. L. c. 150E, § 2, inserted by St. 1973, c. 1078,
§ 2), and to arbitrate grievances (G. L. c. 150E, § 8), an
intent to permit a school committee to bargain away its

traditional authority to make tenure decisions if it so wishes.[5] Whenever the Legislature has limited the powers of school committees, it has done so in express terms, and it is expected that a radical departure from prior policy would be clearly indicated, and not left to doubtful implication. See *DeCanio* v. *School Comm. of Boston, supra; Dowd* v. *Dover,* 334 Mass. 23, 26-27 (1956); *Davis* v. *School Comm. of Somerville, supra* at 363. For much the same reason that we have expressed, the Court of Appeals of New York has declined recently to enforce that portion of a collective bargaining agreement which arguably called for arbitration of a tenure decision. *Cohoes City School Dist.* v. *Cohoes Teachers Ass'n, supra* at 777-778.

Although a school committee may not surrender its authority to make tenure decisions, there is no reason why a school committee may not bind itself to follow certain procedures precedent to the making of any such decision. In this case, the school committee agreed to submit to arbitration on a wide range of subjects. Unless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute, or unless no lawful relief conceivably can be awarded by the arbitrator, an order to arbitrate should not be denied. See *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-583 (1960); G. L. c. 150C, § 2 (*b*). Cf. *School Comm. of Agawam* v. *Agawam Educ. Ass'n,* 371 Mass. 845, 847 (1977). In this case, no occasion for a stay of the arbitration arises merely from the possibility of an arbitrator's award which might purport to intrude into the school committee's inviolate authority.

---

[5] We recognize that, if, as a matter of educational policy, a school committee wishes to submit a particular tenure question to arbitration and to accept the result of the arbitration, it may do so as part of its prerogative. Such an arbitration proceeding and award would not be inconsistent with the school committee's educational policy and, indeed, might be consistent with it. *Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 463-464 (1976). In this case, however, the incumbent school committee has indicated an unwillingness to accept any decision of the arbitrator granting tenure.

Any threat to the school committee's authority has not matured yet because it is far from clear that the arbitrator's award will encroach on the school committee's exclusive domain. The agreement to follow certain procedures preliminary to exercising its right to decide a tenure question, and to permit arbitration of a claim that it has failed to follow those procedures, does not impinge on a school committee's right to make the ultimate tenure decision. If a violation is found by the arbitrator, he may not grant tenure to the teacher, but he may fashion a remedy which falls short of intruding into the school committee's exclusive domain. Some violations of evaluation procedures may be trivial and not justify any relief. Not all violations of a teacher's rights, even constitutional rights, will justify reinstatement. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286 (1977). The arbitrator might direct merely that the omitted procedures be followed and the teacher's record corrected as appears appropriate. However, in other cases, the failure to follow evaluation procedures may be shown to have so prejudiced a teacher's position that more substantial relief may be in order. It would be premature in this case to announce any limits on the scope of an arbitrator's award in such a case, provided it does not award tenure to the teacher. See *School Comm. of West Bridgewater* v. *West Bridgewater Teachers' Ass'n, post*, 121, 125-127, for a discussion of the validity of an arbitrator's award which ordered reinstatement of a teacher. We leave open the question of the validity of an award which imposes sanctions because of the failure of a school committee to follow evaluation procedures although no teacher was harmed by the omission.

If a school committee wishes to deny the application of evaluation procedures to nontenured teachers or to deny such a teacher the right to arbitrate any failure to follow such agreed procedures, the school committee can say so explicitly in the collective bargaining agreement. Once a school committee agrees to follow certain procedures and to permit binding arbitration concerning its alleged failure to adhere to those practices, we see no public policy con-

siderations which prevent full implementation of the terms of the agreement subject, however, to the retention in favor of the school committee of its nondelegable rights. Indeed, adherence to the evaluation procedures may be expected to provide information to the school committee which will permit it to make a fairer and more informed judgment concerning a teacher. See *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n, supra* at 124-125; *School Comm. of West Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 750 (1976) (Goodman, J., dissenting). The fact that ultimately the school committee may make the tenure decision without regard to information produced pursuant to evaluation procedures in no way justifies a school committee's failure to follow the terms of its agreement both to make such evaluations and to permit arbitration of its alleged failure to do so.

The collective bargaining agreement provides that the meaning of the agreement is a "grievance" which can be submitted to arbitration. See n.2 *supra.* The meaning of the agreement is for the arbitrator and not for the courts. The school committee may argue to the arbitrator that the grievances asserted here are not ones which may be the subject of arbitration because of the reservation by the committee of its statutory right "not to rehire non-tenure teachers." The decision of the arbitrator on such a question of interpretation will be final and not subject to review. See *School Comm. of Hanover* v. *Curry,* 369 Mass. 683, 685 (1976); *Greene* v. *Mari & Sons Flooring Co.,* 362 Mass. 560, 562-563 (1972); *Morceau* v. *Gould-Nat'l Batteries, Inc.,* 344 Mass. 120, 124 (1962).

The order granting a stay of arbitration is vacated, and an order shall be entered pursuant to G. L. c. 150C, § 2 (*b*), directing the parties to proceed to arbitration.

*So ordered.*