JOHN BRADLEY & another[1] *vs.* SCHOOL COMMITTEE OF
BOSTON & another.[2]

Suffolk.    April 8, 1977. — July 11, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*School and School Committee. Arbitration. Boston. Contract,* Collective bargaining contract.

Pursuant to the terms of a collective bargaining agreement, a school committee was required to approve transfer requests of incumbent school principals, whose qualifications were unquestioned, to vacant principalships [56-59]; an arbitrator neither exceeded the scope of his authority nor infringed upon the exclusive managerial prerogative of the committee by directing it to appoint the applicants to the requested vacancies [59-60].

CIVIL ACTION commenced in the Superior Court on April 27, 1976.

The case was heard by *Morse, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Kevin F. Moloney,* Assistant Corporation Counsel, for the defendants.

*Richard W. Coleman* (*Karl E. Klare* with him) for the plaintiffs.

HENNESSEY, C.J. The defendants appeal from an order of a Superior Court judge which adopted and confirmed an arbitral award in favor of the plaintiffs. The arbitration award declared that the School Committee of Boston

---

[1] Robert Murphy. Together with John Bradley they are respectively the vice president and president of the Boston Association of School Administrators and Supervisors, a voluntary unincorporated association with numerous members.

[2] The superintendent of the Boston public school system.

(committee) had violated the terms of its collective bargaining agreement with the Boston Association of School Administrators and Supervisors (BASAS) by refusing to approve the transfer requests of sixteen principals, and ordered as a remedy for this violation approval of the sixteen transfers, effective June 30, 1976. A Justice of the Appeals Court granted the committee's application for a stay of the Superior Court's order pending this appeal, and ordered that the committee not fill any of the sixteen vacant positions in a manner inconsistent with the arbitration award. We conclude that there was no error, and that judgment shall be entered accordingly.

In late 1975 sixteen school principals in the bargaining unit represented by BASAS applied for transfers to vacant principalships within the Boston public school system. In January, 1976, the superintendent of the Boston public school system approved these transfer requests and submitted them to the committee. In March, 1976, the committee disapproved all sixteen requests and the superintendent then solicited applications for the positions under a promotional rating procedure which involves community participation in appointments of principals. In April, 1976, BASAS filed a demand for arbitration on the ground that the committee's disapproval of the sixteen transfer requests violated articles 6 and 10 of the collective bargaining agreement then in force. In May, 1976, after a hearing at which the parties had an opportunity to present testimony and argument, the arbitrator rendered his award and opinion supporting the BASAS position.

The arbitrator found that the parties entered into a collective bargaining agreement covering the 1972-1973 school year which provided that all privileges and benefits previously enjoyed by principals would continue in effect. This agreement was supplemented by the "Leftwich proposal," a plan which established a procedure governing appointments to vacant principalships with a view to community participation in the selection process, and which, in amended form, preserved existing transfer rights of incumbent principals. The parties again preserved the

established transfer rights of principals, with some additions and modifications, by incorporating their 1973 agreement in their successor agreement. No one disputes that this successor agreement covers the committee's actions in this case.

The arbitrator also found an established committee practice of approving transfer requests of incumbent principals who were nominated by the superintendent of schools. This practice constituted a "privilege" enjoyed by principals within the meaning of the parties' agreement.

The arbitrator concluded that the parties were obliged to employ the Leftwich proposal (incorporated in their collective bargaining agreement) for filling vacant principalships.[3] Under this arrangement, all vacant principalships were to be filled through a promotional rating system except those positions filled through transfers of incumbent principals whose competence to fill the positions requested was not questioned by the committee. The arbitrator decided that the committee rejected the proposed transfers, not because of the applicants' unsuitability, but because of a desire to use the promotional rating procedure to fill all existing vacancies.[4] Rejection of the proposed transfers on this basis was impermissible under the express terms of the parties' contractual obligations. Concluding that disputes over committee transfer deci-

[3] The arbitrator noted that the United States District Court, District of Massachusetts, adopted the Leftwich plan in its February, 1976, order to desegregate the administrative staff of the Boston public school system, recognizing the transfer rights of incumbent administrators and excluding positions thus filled from the operation of racial hiring quotas.

[4] The arbitrator specifically found that the committee has a contractual right to approve or disapprove transfer requests and that it disapproved these transfer requests solely for the purpose of applying the promotional rating procedure to selection of principals, not because it considered the transfers unsuitable on their merits. He therefore concluded that the parties' dispute concerned the *criteria* for transfer disapproval, not the right to disapprove transfers. Moreover, he noted that members of the committee offered to act favorably on the transfer requests if BASAS would make a concession on an unrelated matter in ongoing negotiations between the parties, and found that refusal to approve transfers on this basis would have constituted a contract violation.

sions are arbitrable, he directed the committee to comply with its past practice, contractually preserved, by appointing the sixteen applicants to the requested vacancies.

The committee has not complied with this arbitral order. It argues that the arbitrator exceeded his authority, see G. L. c. 150C, § 11 (*a*) (3), in deciding a dispute over inter school transfers of incumbent personnel, because such matters are within the exclusive managerial prerogative of the committee. For the same reason, the committee maintains, provisions of their collective bargaining agreement cannot prevent them from changing the manner in which they select school principals. Finally, the committee claims that, even if the arbitrator had authority to decide disputes concerning principals' transfer rights, he had no remedial authority to order approval of the proposed transfers.

We conclude that the judge properly confirmed the arbitrator's award. The subject matter of this dispute is not within the exclusive managerial prerogative of the committee and is therefore a proper subject for negotiation and arbitration. Moreover, the arbitrator had authority to order that the committee follow its past practice and approve the sixteen transfer requests.

1. The central issue in this case is whether the committee is bound to approve transfer requests of incumbent principals whose qualifications are unquestioned. An arbitrator determined that the committee agreed to approve such requests and that the committee is bound to comply with its agreement. Despite its agreement to approve such requests and to submit disputes over the scope of its agreement to arbitration, the committee now contends that principals' assignments involve decisions so predominantly within the realm of educational management that they are not proper subjects of collective bargaining or of arbitration. Cf. *School Comm. of Hanover* v. *Curry,* 369 Mass. 683 (1976); *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686 (1976) (abolition of school position is matter of educational policy and not proper subject of arbitration); G. L. c. 150C, § 11 (*a*) (3).

The committee claims that the selection for each school of an appropriate principal constitutes a committee decision which cannot be delegated to an arbitrator or abandoned by agreement. While the committee may be correct in its claim, we need not decide that issue today, because the agreement and the arbitral award involved in this case do not address such a right. They address the manner in which the committee selects principals for particular schools and they permit committee disapproval of any inappropriate transfer. See note 4, *supra*. Cf. *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 114 (1977) (agreement to follow certain procedures before exercising right to decide tenure and to permit arbitration of claims concerning these procedures does not impermissibly affect exclusive committee right to make ultimate tenure decision); *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 461 (1976) (agreement on number of substitute teachers relates to manner in which committee implements agreement on class size and teaching load without infringing on policy prerogatives). Thus, the problem presented here concerns committee prerogatives over the manner in which vacant principalships are filled.

Like most problems arising in the context of collective bargaining in the public sector, the manner in which principalships are filled is a composite of issues affecting conditions of employment and issues affecting educational policy. See *School Comm. of Boston* v. *Boston Teachers Local 66*, 372 Mass. 605 (1977); *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 461 (1976). The ability of a principal to transfer his place of employment constitutes a term or condition of his employment, and conditions of employment are proper subjects for arbitration and collective bargaining in the public sector. G. L. c. 150C, § 1. G. L. c. 150E, § 2. However, those responsible for management of a public school system must establish policies concerning the selection of school personnel which protect the interests of their constituency. See G. L. c. 71, § 37. Therefore we must decide whether the issues of educational policy which are implicated in

the criteria for filling vacant principalships so outweigh the similarly implicated issues of employment conditions that the committee cannot make even voluntary agreements on this subject. *School Comm. of Boston* v. *Boston Teachers Local 66, supra.*

We think that questions relating to committee action on incumbents' transfer requests lack the prerogative quality required to prevent enforcement of a valid agreement thereon. The agreement in this case did not eliminate the committee's right to disapprove transfer requests. Cf. *School Comm. of Danvers* v. *Tyman, supra; Allen* v. *Sterling,* 367 Mass. 844, 847-848 (1975) (agreements not affecting right to refuse rehiring). Nor did it prevent the committee from deciding that a particular school required for its principal a person selected through a procedure involving community participation. The agreement did not require that the committee approve transfer requests of qualified incumbents after its term expires.[5] Contrast *School Comm. of Hanover* v. *Curry,* 369 Mass. 683 (1976) ; *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690 (1976). Nor does the agreement conflict with any established committee educational policies.[6]

Therefore, the committee's agreement to follow past practices in handling transfer requests of incumbent principals and its agreement to arbitrate any dispute arising over the terms of its agreement are binding and enforceable. The arbitrator could permissibly find that the com-

---

[5] The committee argues that an agreement negotiated in 1973 cannot restrict committee action in 1976. However, evidence in the record warrants an inference that the collective bargaining agreement which covered the 1975-1976 school year incorporated the terms of the 1973 agreement. This incorporation of a prior agreement effectively reenacted the terms of the 1973 agreement. Thus, the transfer disapprovals did not violate the 1973 agreement, but instead violated the successor agreement.

[6] Although the committee argues that its disapproval of the transfer requests derived from a change in its educational policy — from a policy that would fill most vacancies through promotional rating procedures to a policy that would fill all vacancies in this manner — the record before us does not warrant a conclusion that the committee had made a permanent official policy change.

mittee had violated its agreement by disapproving the sixteen transfer requests on the basis of its desire to use the Leftwich proposal for appointments to the vacancies at issue. There was no error in the Superior Court judge's order confirming this arbitral award.

2. When an arbitrator finds that a school committee has violated a collective bargaining agreement, he may award a remedy "which falls short of intruding into the school committee's exclusive domain." *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 114 (1977). He even may order that a committee reinstate an employee when he cannot order that a school committee grant tenure to the reinstated employee. *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 126-127 (1977). But see *School Comm. of W. Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 747 (1976), further appellate review granted, 372 Mass. 843 (1977). If he finds that procedures or practices agreed to by the parties have not been complied with, he may order that the omitted procedure or practice be followed. Nonetheless, the committee maintains that the arbitrator in this case could not permissibly order approval of the sixteen transfer requests because such an order exercised the exclusive managerial prerogatives of the committee and by-passed the very committee procedures the agreement was found to require.

In this case, the arbitrator found that the parties agreed to follow an established practice whereby the committee approves transfer requests of incumbent principals (once they are approved by the superintendent of schools) except when it has a reasonable objection to the transfer of a particular applicant to a particular school. The arbitrator concluded that the committee disapproved sixteen transfer requests without reasonable, contractually permissible objections, and ordered that the committee comply with its past practice.

This order to comply with past practices effectively orders approval of the sixteen transfer requests. We think this effect does not impinge on the committee's exclusive prerogatives. Cf. *School Comm. of W. Bridgewater* v.

*West Bridgewater Teachers' Ass'n, supra* (reinstatement of teacher for failure to comply with evaluation procedures does not impinge on school committee's right to deny her tenure). Nor does this order by-pass required approval procedures. At no point in the various proceedings did the committee voice concern over the suitability of the proposed transfers, despite its many opportunities to raise objections. From this we conclude that after consideration it found these applicants to be qualified and appropriate for the placements requested but it found other applicants more appropriate to fill the vacancies at issue. While the committee need not have agreed to approve transfers of qualified incumbent principals, having so agreed voluntarily it cannot avoid its obligations.

The arbitrator's order requires that, having found the applicants to be appropriate for the vacancies requested, the committee follow its established practice of approving the transfers. Thus the order neither usurps committee authority nor by-passes the practice in question. The Superior Court judge therefore did not err in his order confirming the arbitrator's award in its entirety. The order is affirmed, and judgment is to be entered to that effect.

*So ordered.*

