BERKSHIRE HILLS REGIONAL SCHOOL DISTRICT COMMITTEE *vs*. ROBERT J. GRAY, JR., & others.

Berkshire.    September 12, 1977. — November 17, 1977.

Present: HALE, C.J., KEVILLE, GOODMAN, GRANT, ARMSTRONG, & BROWN, JJ.

*Arbitration,* Jurisdiction, Enjoining arbitration. *School and School Committee,* Appointment of principal.

A decision whether a teacher employed by a school committee should be appointed to a vacancy in a position of principal was within the exclusive and nondelegable powers of the committee and therefore could not be delegated to an arbitrator. [688-690] BROWN, J., dissenting, with whom GOODMAN, J., joined.
For the purposes of G. L. c. 150C, § 2(*b*), an agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration is equivalent to the absence of a controversy covered by the provision for arbitration, and consequently a judgment enjoining arbitration was not premature. [690-691]

CIVIL ACTION commenced in the Superior Court on April 27, 1976.

The case was heard by *Hayer*, J.

---

[13] See and compare *Balsavich* v. *Local 170, Intl. Bhd. of Teamsters,* 371 Mass. 283, 287-288 (1976).

*Brian A. Riley* for the defendants.
*J. Norman O'Connor* for the plaintiff.

ARMSTRONG, J.    The issue in this case is whether the plaintiff school committee is bound by its collective bargaining agreement with the Berkshire Hills Education Association (association)[1] to submit to arbitration a dispute concerning a vacancy in a position of principal. The case was submitted to the Superior Court on a statement of agreed facts, from which it appears the school committee invited applications for appointment to the vacant position in accordance with the procedures set out in the collective bargaining agreement and that the defendant Gray, a teacher who is employed by the school committee and is a member of the association, applied for the appointment. The collective bargaining agreement provides that "[e]very vacancy in any supervisory position or other professional position shall be filled by an applicant already in the employ of the District if his educational qualifications and experiences for the position shall be substantially equal to those of any other applicant not already in the employ of the District." Numerous applications were received other than Gray's, but his was the only application from a person employed by the district.

The school committee, at the suggestion of the superintendent, interviewed Gray and two other applicants. The school committee offered the position successively to the latter two applicants, but they declined appointment. The school committee declined to offer the position to Gray,[2]

---

[1] The association is named as a defendant and is an employee organization within the meaning of G. L. c. 150E, § 1. It is the exclusive bargaining agent for substantially all employees of the plaintiff.

[2] It is agreed that "[w]ithout recommending [Gray] for the position, the [s]uperintendent . . . indicated to the [school committee] that it could offer the position to [Gray]." We interpret that stipulation to mean that the superintendent was willing formally to recommend Gray if that should be a prerequisite of his appointment under G. L. c. 71, § 38, and that the committee chose not to appoint him. Although the demand for arbitration stated as a grievance the superintendent's failure to recommend as well as the committee's failure to appoint, the

and instead directed the superintendent to reopen applications and republicize the position.

The association then filed a grievance and demanded arbitration. The school committee responded by commencing this action under G. L. c. 150C, § 2(*b*), to enjoin arbitration of the dispute, and a judgment entered granting the relief sought. The association appealed.

We observe at the outset that the matter sought to be submitted to arbitration does not involve a question of adherence by the school committee to procedures set out in the collective bargaining agreement for the filling of the vacancy. Contrast *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 108, 113-115 (1977); *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. 116, 117 (1977); *School Comm. of West Bridgewater* v. *West Bridgewater Teachers' Assn.*, 372 Mass. 121 (1977); *Bradley* v. *School Comm. of Boston*, 373 Mass. 53, 54-56, 58 (1977). Rather, the issue sought to be submitted to arbitration is whether the school committee is bound by the terms of the collective bargaining agreement to appoint Gray, as a "person already in the employ of the district," to the vacant principal's position. The question for decision, in other words, is whether the ultimate power to appoint principals of schools, conferred on the school committee by G. L. c. 71, § 38, is a power which may be delegated to an arbitrator or is instead one which is committed to the exclusive, nondelegable managerial prerogative of the school committee.

That question was alluded to, but not answered, in *Bradley* v. *School Comm. of Boston*, 373 Mass. at 56. But at least one other recent case, *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106 (1977), must be read as recognizing that the appointment of academic personnel is a power vested exclusively in the school committee and is not sub-

association, in the light of the stipulation, has appropriately not attempted to argue that the superintendent's actions constitute a grievance separate from the committee's but has instead defined the issue in the case to be the arbitrability of "the plaintiff's [i.e., school committee's] failure to promote a school teacher to the position of principal of a middle school."

ject to delegation through collective bargaining. The issue in that case was the extent to which a decision whether to confer tenure on a probationary teacher by renewing her service beyond the three-year period specified in G. L. c. 71, § 41, could be delegated to an arbitrator. The Supreme Judicial Court, following New York cases, took an intermediate position which distinguished between "the evaluation procedures guaranteed in a collective bargaining agreement" and "the school board's ultimate authority to pass on nonrenewal." 372 Mass. at 111. The former was held to be an appropriate subject for collective bargaining and for arbitration. Of the latter, the court said, "We accept the school committee's argument that, against its will, it may not delegate to an arbitrator its authority to make decisions concerning tenure. The nondelegable authority of an incumbent school committee in the appointment and reappointment of academic personnel has a long tradition." *Id.* Compare *O'Brien* v. *Pittsfield,* 316 Mass. 283, 285-286 (1944); *Demers* v. *School Comm. of Worcester,* 329 Mass. 370, 373 (1952); *Murphy* v. *Cambridge,* 342 Mass. 339, 341 (1961); *Sullivan* v. *School Comm. of Revere,* 348 Mass. 162, 165 (1964); *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 689 (1976).

A principal of a school has been characterized in many decisions as "a superior sort of teacher." See, e.g., *Dimlich* v. *School Comm. of Andover,* 344 Mass. 643, 646 (1962), and case cited. A principal is charged by G. L. c. 71, § 59B, with the duty to "plan, manage, operate and evaluate" a school's educational program. He is the senior management officer of the school and of the teaching staff of the school, subject only to the superintendent and the school committee itself. He is charged with responsibility for the day-to-day conduct of the school's educational program. If the power to appoint teachers is so central to the school committee's managerial prerogative as to be nondelegable and nonarbitrable, it is manifest that the appointment of a principal must similarly fall within the school committee's exclusive and nondelegable powers. It would not be consonant with the wide discretion in educational policy tradi-

tionally accorded school committees in this Commonwealth to rule that they can be hobbled with key educational supervisory personnel not of their own initial choosing.

The association makes a further argument that the judgment enjoining arbitration was premature, and that the complaint should have been dismissed, because it has not been shown that arbitration will necessarily lead to a form of relief which will impinge on the school committee's exclusive managerial prerogatives. It relies on certain statements appearing in *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 113-114,[3] which appear to us to apply particularly to situations in which the interpretation of the collective bargaining agreement is in dispute or in which agreed upon procedures prerequisite to the exercise of an exclusive power are alleged to have been violated. We deal here with a very different question, namely, whether the school committee may be required by this or any collective bargaining agreement to appoint a particular person to a vacant principal's position. If we are correct in our conclusion that that power falls within the "area of managerial prerogative over educational policy which is committed to the school committee and which it cannot bargain away," *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 158 (1975), *S.C.* 369 Mass. 683 (1976), it follows that this action was not brought prematurely. The point is concluded by *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. at 119: "G. L. c. 150C, § 2(*b*), inserted by St. 1959, c. 546, § 1, ... authorizes a Superior Court judge to stay an arbitration proceeding, either commenced or threatened, if he finds '(2) that the claim sought to be arbitrated does not state a controversy covered by the

---

[3] "Unless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute, or unless no lawful relief conceivably can be awarded by the arbitrator, an order to arbitrate should not be denied.... [N]o occasion for a stay of the arbitration arises merely from the possibility of an arbitrator's award which might purport to intrude into the school committee's inviolate authority. Any threat to the school committee's authority has not matured yet because it is far from clear that the arbitrator's award will encroach on the school committee's exclusive domain."

provision for arbitration. . . .' For the purposes of G. L. c. 150C, § 2(*b*), we regard an agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration as equivalent to the absence of a controversy covered by the provision for arbitration."

*Judgment affirmed.*

This case was initially heard by a panel composed of Hale, C.J., Armstrong and Brown, JJ., and was thereafter submitted on the record and briefs to the other Justices, all of whom took part in this decision in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

BROWN, J. (dissenting, with whom Goodman, J., joins). We do not agree with the majority's treatment of the rather fundamental issue presented by this appeal. The basis of our disagreement is twofold. First, as the issue presented is not one involving nondelegable education policy (see *Bradley* v. *School Comm. of Boston,* 373 Mass. at 57-58), we can see no basis for the majority's conclusion that this matter is not arbitrable. *School Comm. of Danvers* v. *Tyman,* 372 Mass. at 113. See *Bradley* v. *School Comm. of Boston,* 373 Mass. at 59. See also *In re Susquehanna Valley Cent. Sch. Dist. at Conklin,* 37 N.Y.2d 614 (1975). Secondly, as we read G. L. c. 71, § 59B, a principal is primarily and essentially an administrator. See G. L. c. 150E, § 1, as amended through St. 1976, c. 480, § 20, which limits the exclusion for "managerial employees" to those who "participate to a substantial degree in formulating or determining policy." For these two reasons we are constrained to separate ourselves from the majority. Cf. *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.,* 363 U. S. 574, 582-583 (1960). See generally, *Cape Cod Gas Co.* v. *Steelworkers Local 13507,* 3 Mass. App. Ct. 258 (1975).