690                                    42 Mass. App. Ct. 690

School Committee of Lowell *v.* Local 159, Service Employees International Union.

## School Committee of Lowell *vs.* Local 159, Service Employees International Union.

No. 96-P-1282.

Middlesex. March 19, 1997. - May 22, 1997.

Present: Porada, Smith, & Ireland, JJ.

*School and School Committee,* Appointment of personnel, Custodian, Superintendent of schools, School principal. *Arbitration,* Authority of arbitrator, School committee. *Public Employment,* Collective bargaining. *Labor,* Arbitration, Collective bargaining, Public employment.

A provision of a collective bargaining agreement that vested in the school committee the ultimate approval of the selection of a custodian to fill a vacancy was in conflict with G. L. c. 71, § 59B, which shifted the responsibility for selection of custodial and other school personnel to school principals subject to the supervision of school superintendents, and as that statute was not specifically enumerated in G. L. c. 150E, § 7(*d*), as one over which collective bargaining agreements prevail, the provision yielded to § 59B: a decision of an arbitrator to the contrary was beyond his power to make and was ordered vacated. [692-693]

Civil action commenced in the Superior Court Department on July 11, 1994.

The case was heard by *Richard E. Welch III,* J., on motions for summary judgment.

*Daniel R. Wojcik* for the plaintiff.

*William J. Riley* for the defendant.

Porada, J. The plaintiff, Lowell School Committee (committee), appeals from a judgment of the Superior Court affirming an arbitrator's award in favor of Local 159, Service Employees International Union (union). The arbitrator declared that the committee had violated Article XIX[1] of the collective bargaining agreement by refusing to honor the successful bid of a school custodian for a vacancy at another school and directed the committee to award the job to him.

---

[1]The pertinent provisions of Article XIX provide:

"A. Promotions, transfers and matters covered by Civil Service shall be governed by Massachusetts General Laws Chapter 31 as amended.

"B. An employee shall acquire seniority status upon the completion of

The committee had argued that it could not make the transfer because the Education Reform Act had given that power to the school's principal and the superintendent. Although the Superior Court judge determined that the arbitrator had erred in concluding that the committee, rather than the school's principal and the superintendent, possessed the power to approve the transfer under the Education Reform Act's amendment of G. L. c. 71, § 59B, the judge ruled that the arbitrator had not acted beyond his powers and affirmed the award. On appeal, the committee argues that the arbitrator's ruling infringes upon the exclusive managerial powers of the school's principal and the superintendent under G. L. c. 71, § 59B, and was beyond his power to make. We agree and reverse.

We summarize the facts, which are not in dispute, in this case. On September 1, 1993, the committee posted a notice for a job vacancy at the Reilly School for the position of a day shift custodian. The posting was conducted in accordance with Article XIX of the parties' collective bargaining agreement. The bid was won by David LeTourneau who was then working for the committee as a custodian at the Butler School. The committee advised the union that LeTourneau was the successful bidder on September 9, 1993, but later on the same date notified the union that the job would not be

thirty (30) days employment and upon completion of which his or her seniority shall date back to the first day of his or her employment in the School Department as a permanent employee in grade. Grade shall be the last position that the employee has been permanently appointed to.

"C. Bidding of jobs will be governed by seniority of those employees with the approval of the School Committee.

"D. When a school building is replaced by another school, the employees of the former school shall have first choice of positions in the school used as a replacement with the approval of the School Committee.

"E. Notices for bids must be posted in all schools seven (7) days before the closing of the bid.

"F. When vacancies occur or new positions are created, the first employee on the seniority list in that grade shall be offered said job (with approval of the School Committee). The union shall receive immediate notices of all vacancies or new jobs, and it is agreed that action for filling said vacancy or new job will be instituted within five (5) days thereafter. In the event the oldest employee in point of service does not want the job, he or she must notify the union and employer within five days and said position must be filled within an additional five (5) days thereafter from the seniority list with the next senior employee whom the School Committee deems qualified."

692                                    42 Mass. App. Ct. 690

School Committee of Lowell *v.* Local 159, Service Employees International Union.

awarded to LeTourneau because the Education Reform Bill, approved as an emergency act on June 18, 1993, rendered such contracts null and void. As a result, LeTorneau did not transfer to the Reilly School.[2] The union filed a grievance, and the matter proceeded to arbitration by agreement of the parties on the question whether the committee had violated Article XIX of the collective bargaining agreement when it failed to honor the bid of LeTourneau to transfer to the Reilly School.

There is no question that the Education Reform Act shifted the responsibility for the hiring and firing of teachers and "other personnel assigned to the school" from the committee to school principals subject to the supervision of school superintendents. See G. L. c. 71, § 59B, as amended by St. 1993, c. 71, § 53; *Higher Educ. Coordinating Council* v. *Massachusetts Teachers' Assn.*, 423 Mass. 23, 29 n.6 (1996). Section 59B specifically provides: "Principals employed under this section shall be responsible, consistent with district personnel policies and budgetary restrictions and subject to the approval of the superintendent, for hiring all teachers, instructional or administrative aides, and other personnel assigned to the school, and for terminating all such personnel, subject to review and prior approval by the superintendent and subject to the provisions of this chapter." Although the word "hire" is not specifically defined, we see no reason why it should not be given its ordinary meaning, "employ." See *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 392 Mass. 407, 415 (1984). Webster's Third New Intl. Dictionary 1072 (1993). Because it is apparent that the Legislature sought to give to school principals the power to select all teachers and staff assigned to their school, subject to the approval of the school superintendent, we conclude § 59B embraces transfers as well as new hires; otherwise, the principal's power of selection would be thwarted. We conclude, therefore, that the provision of the parties' collective bargaining agreement which vests the ultimate approval of the selection of a custodian to fill a vacancy in the school committee is in conflict with § 59B as amended by the Education Reform Act. Because G. L. c. 71, § 59B, is not one of the statutes specifically enumerated in G. L. c. 150E, § 7(*d*),

---

[2]The record does not indicate whether the principal or superintendent did not approve the transfer.

over which collective bargaining agreements prevail, this provision must yield to § 59B. *School Comm. of Natick* v. *Education Assn. of Natick*, 423 Mass. 34, 39 (1996). Accordingly, the arbitrator's ruling which directs a result contrary to § 59B was beyond his power to make and must be vacated. *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995). G. L. c. 150E, § 7(*d*).

In so ruling we do not, however, invalidate those provisions of the parties' collective bargaining agreement which establish the process for filling vacancies by bidding and seniority so long as the prior approval which was vested in the school committee rests now with the principal and superintendent.[3] We see nothing in the Education Reform Act which in any way changed the collective bargaining rights of school custodians relating to the terms and conditions of their employment. In fact, at the time of the enactment of the Education Reform Act, the Legislature was cognizant that the school committee remained the exclusive bargaining agent for the school district, St. 1993, c. 71, § 62, and that the principal's and superintendent's powers of appointment must be exercised in a manner consistent with district personnel policies, St. 1993, c. 71, § 53. We do not perceive the procedures for filling vacancies to infringe upon the powers of the principal and superintendent so long as they retain the right of approval of the employee selected pursuant to those procedures. See *Bradley* v. *School Comm. of Boston*, 373 Mass. 53, 56-58 (1977) (arbitrator had the authority to determine if school committee had violated collective bargaining agreement in disapproving the transfer requests of school principals where right of transfer construed to be condition of employment and where the committee had the right to disapprove any inappropriate request for transfer).

Similarly, we conclude that there is nothing in the Education Reform Act to suggest that § 59B was intended to supersede or supplant any rights that school custodians have

[3]Article XXIII of the parties' collective bargaining agreement provides that if "any Article, Section or Clause of this agreement be declared illegal by a court of competent jurisdiction, said Article, Section or Clause as the case may be shall be automatically deleted from this Agreement to the extent that it violates the law, but the remaining Articles, Sections and Clauses shall remain in full force and effect for the duration of this Agreement, if not effected [*sic*] by the deleted Articles, Sections or Clauses."

under G. L. c. 31, the civil service law. While the power of appointment of staff for a school has now been vested in school principals and superintendents, their power, like that of the school committee before them, remains subject to the provisions of G. L. c. 31, if applicable.

Accordingly, the judgment of the Superior Court is reversed, and a new judgment shall enter vacating the arbitrator's award.

*So ordered.*