BERKSHIRE HILLS REGIONAL SCHOOL DISTRICT COMMITTEE *vs.*
BERKSHIRE HILLS EDUCATION ASSOCIATION & others.[1]

Berkshire. May 1, 1978. — June 26, 1978.

Present: QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Arbitration,* Jurisdiction, Enjoining arbitration. *School and School Committee,* Appointment of principal.

The appointment of a principal is a decision committed to the nondelegable authority of a school committee under G. L. c. 71, §§ 37, 38 and 59B, and therefore it is not a proper matter for arbitration under a collective bargaining agreement. [526-529]

CIVIL ACTION commenced in the Superior Court on April 27, 1976.

The case was heard by *Hayer,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brian A. Riley* for the defendants.

*J. Norman O'Connor* for the plaintiff.

---

[1] The other defendants are (1) the Massachusetts Teachers Association, (2) certain officers of the Berkshire Hills Education Association and of the Massachusetts Teachers Association as representatives of their respective associations, and (3) Robert J. Gray, Jr., a member of the Berkshire Hills Education Association and a teacher employed by the plaintiff, whose grievance is the subject of this action.

375 Mass. 522                                          523

Berkshire Hills Reg. School Dist. Comm. v. Berkshire Hills Educ. Ass'n.

QUIRICO, J. This is an appeal from an order, under G. L. c. 150C, § 2 (b), granting a stay of arbitration concerning a grievance asserted on behalf of the defendant Robert J. Gray, Jr., a teacher in the Berkshire Hills Regional School District (school district). The issue before us is whether the collective bargaining agreement (agreement) between the school district committee (school committee) and the Berkshire Hills Education Association (association) compels the committee to submit to arbitration a dispute concerning the claim by Gray that the committee is required to appoint him to the position of principal at the Searles Middle School. We conclude that arbitration was properly stayed for the reason that the appointment of a principal is a decision committed to the nondelegable authority of a school committee, and therefore it is not a proper matter for arbitration.

The factual background of the case, taken from the statement of agreed facts on which the judge's decision is based, is as follows. In September, 1974, the school committee and the association, acting pursuant to G. L. c. 150E, entered into a collective bargaining agreement for the period from July 1, 1974, to June 30, 1977. The agreement set forth certain procedures to be followed in regard to vacancies and promotions arising within the school district, and provided in part that "[e]very vacancy in any supervisory position or other professional position shall be filled by an applicant already in the employ of the District if his educational qualifications and experiences for the position shall be substantially equal to those of any other applicant not already in the employ of the District." The agreement also included a four-step procedure for resolving grievances[2] the last step being binding arbitration.

In October, 1975, the school committee learned that on January 31, 1976, there would be a vacancy in the position

---

[2] Article III A-1 of the agreement defined a "grievance" as follows: "A 'grievance' is a claim based upon the interpretation, meaning, violation, or application of any of the provisions of this Agreement, or any subsequent Agreement, entered into pursuant to this Agreement."

of principal at the Searles Middle School which was located within the school district and was operated under the committee's direction and supervision. The vacancy was duly and seasonably publicized by the school committee pursuant to the terms of the agreement.

The school committee received over 100 applications for the vacancy, including one from Gray, who was the only applicant already employed by the school district. The superintendent of schools (superintendent) reviewed the applications and interviewed several of the applicants. Thereafter, he forwarded the names of three applicants, including that of Gray, to be interviewed by the school committee. These interviews were conducted on January 12, 1976. Subsequently, the superintendent recommended to the school committee two of the applicants other than Gray for appointment to the principal's position. However, on being offered the position by the school committee, each of the other applicants, in successive order, declined appointment. Thereafter, the superintendent, without recommending Gray, indicated to the school committee that it could offer the position to Gray or reopen applications for the position.

The school committee did not offer the position to Gray, but instead directed the superintendent to reopen applications and publicize the position. As a result of this action, the association on February 2, 1976, filed a grievance on behalf of Gray. The grievance was processed through the first three steps of the grievance procedure, and, on March 31, 1976, when the matter had not been resolved, the association demanded arbitration.

On April 27, 1976, the school committee filed a complaint in the Superior Court seeking a stay of arbitration. A hearing was held, and, on July 27, 1976, the judge entered an order in which he permanently enjoined arbitration proceedings because "the appointment of a principal is the exclusive nondelegable decision of the School Committee and should not be submitted to arbitration. The grievance is not a matter subject to arbitration." The defendants appealed

375 Mass. 522                                                525

Berkshire Hills Reg. School Dist. Comm. *v.* Berkshire Hills Educ. Ass'n.

to the Appeals Court, which affirmed the order. *Berkshire Hills Regional School Dist. Comm.* v. *Gray*, 5 Mass. App. Ct. 686 (1977). The defendants applied for further appellate review by this court, and we granted the request. G. L. c. 211A, § 11.

The power and authority of the school committee in this area derive from several sections of G. L. c. 71. Section 37 gives to a school committee "general charge" of the public schools. Section 38, as amended through St. 1974, c. 342, provides that a school committee "shall elect and contract with the teachers of the public schools, shall require full and satisfactory evidence of their moral character, and shall ascertain their qualifications for teaching and their capacity for the government of schools." Section 59B, inserted by St. 1973, c. 421, gives specific authority to a school committee to appoint school principals, and provides in part that a "school committee . . . shall employ a principal for each public school and fix his compensation. A principal employed under this section shall be the administrator of said school subject to the supervision and direction of the superintendent and subject to the regulations and policies of the school committee."

The school committee claims that under the statutory sections cited above the appointment of a principal is a decision within its sole and exclusive authority, and that the committee cannot, by a collective bargaining agreement, delegate its authority for such a decision or commit itself to binding arbitration on such an appointment.[3] The Appeals Court agreed with that contention. In a number of previous decisions of this court, we have outlined those areas of exclusive managerial prerogative entrusted to a school committee by G. L. c. 71, §§ 37 and 38, which are not subject to delegation, interference or control by collective bargaining agreements or provisions therein for arbitration. In *School Comm. of Hanover* v. *Curry*, 369 Mass. 683, 685 (1976),

---

[3] Although this question was alluded to in *Bradley* v. *School Comm. of Boston*, 373 Mass. 53, 56-57 (1977), it was not decided.

and *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 689-690 (1976), we held that the abolition by a school committee of certain supervisory academic positions is a matter of educational policy, committed to the "nondelegable" and "exclusive" decision of the committee by G. L. c. 71, § 37. We held in those cases that it is beyond the power of a school committee to bind itself to arbitration which would interfere with such decision. *Id.* In *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362 (1940), citing G. L. c. 71, §§ 37 and 38, we held that "[b]y long established legislative policy school committees are given general management of the public schools including the election and dismissal of teachers. . . . The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system." We have also held that "school committees have the plenary power to change the duties or rank of a teacher entrusted with special duties of management or direction. *Downey* v. *School Comm. of Lowell*, 305 Mass. 329, 331 (1940). See *Kelley* v. *School Comm. of Watertown*, 330 Mass. 150, 152, 154 (1953)." *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 795 (1977). In the exercise of that power school committees have an affirmative duty in the interest of their constituency to select personnel best suited for management positions. See *id.*; *Jantzen* v. *School Comm. of Chelmsford*, 332 Mass. 175, 177-178 (1955).[4]

Based on these decisions, we think the power to appoint a principal comes within the area of the school committee's nondelegable, managerial prerogative over educational policy, which is not a proper subject for collective bargain-

---

[4] For other cases detailing the nondelegable authority of school committees in the appointment and reappointment of academic personnel, see *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 795-796 (1977), and cases cited.

375 Mass. 522 527

Berkshire Hills Reg. School Dist. Comm. *v.* Berkshire Hills Educ. Ass'n.

ing or arbitration.[5] As noted by the Appeals Court, "[a] principal is charged by G. L. c. 71, § 59B, with the duty to 'plan, manage, operate and evaluate' a school's educational program. He is the senior management officer of the school and of the teaching staff of the school, subject only to the superintendent and the school committee itself. He is charged with responsibility for the day-to-day conduct of the school's educational program." *Berkshire Hills Regional School Dist. Comm.* v. *Gray*, 5 Mass. App. Ct. 686, 689 (1977). As such, "it is manifest that the appointment of a principal . . . [falls] within the school committee's exclusive and nondelegable powers." *Id.* at 689.

Moreover, in addition to being a matter of educational policy committed to the school committee by the operation of G. L. c. 71, §§ 37 and 38, we think the power to appoint principals is *specifically reserved* to the committee by G. L. c. 71, § 59B. The statute is explicit: "The school committee . . . shall employ a principal for each school." Inasmuch as the collective bargaining agreement can be read to provide for the arbitration of a dispute concerning the appointment of a principal, and the grievance brought by the association in fact seeks the appointment of Gray as principal, they are in conflict with G. L. c. 71, § 59B. Although G. L. c. 150E, § 7, gives collective bargaining agreements precedence over certain enumerated statutes, G. L. c. 71 is not among those listed. We do not find in G. L. c. 150E an intent to permit a school committee to "bargain away" its traditional or statutory authority under G. L. c. 71, §§ 37, 38 and 59B, to make appointment decisions. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 112-113 (1977). Thus, the provisions of c. 71 prevail over collective bargaining agreements

---

[5] The association argues that the broad language used in the collective bargaining agreement to define grievances (see note 2, *supra*) demonstrates that the parties intended that matters involving any of the terms of the agreement, such as the present controversy, were to be submitted to arbitration. However, such contention loses its force where, as here, the very subject of the proposed arbitration is not legally arbitrable. Contrast *School Comm. of Southbridge* v. *Brown*, ante 502, 503-505 (1978).

subject to G. L. c. 150E. *School Comm. of W. Springfield* v. *Korbut, supra* at 793 n.9. *School Comm. of Braintree* v. *Raymond, supra* at 688.

The Appeals Court held, and we agree, that this is not an instance where the matter sought to be submitted for arbitration involves a question of adherence by the school committee to *procedures* set forth in the collective bargaining agreement for the filling of the vacancy. *Berkshire Hills Regional School Dist. Comm.* v. *Gray, supra* at 688. Contrast *School Comm. of W. Springfield* v. *Korbut, supra* at 795-796; *School Comm. of Danvers* v. *Tyman, supra* at 114-115 (1977); *Dennis-Yarmouth Regional School Comm.* v. *Dennis Teachers Ass'n,* 372 Mass. 116, 117 (1977); *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 122 (1977). Rather, the issue sought to be arbitrated concerns the question whether Gray, as "an applicant already in the employ of the District,"[6] is entitled to be appointed as principal of the Searles Middle School. Such decision, pursuant to our reasoning above, is not a proper subject for arbitration.

Further, we disagree with the association's argument that the judge's order granting a stay of arbitration was premature. The association contends that it was not shown "that the ultimate award of the arbitrator would infringe upon any matter vested exclusively in the [school committee]." In making this claim, the association relies on our decision in *School Comm. of Danvers* v. *Tyman, supra* at 113, wherein we held that "[u]nless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute, or unless no

---

[6] The issue whether the school committee can bind itself or successor members of the committee by a collective bargaining agreement to give preference of appointment to applicants already employed within the school system is not before us for decision and nothing which we say in this opinion should be assumed to indicate that we take any present position on that issue. It may be argued that provisions to such effect infringe on the school committee's nondelegable and exclusive powers of appointment, but it has not been so argued in the present case.

lawful relief conceivably can be awarded by the arbitrator, an order to arbitrate should not be denied." However, contrary to the situation in the *Danvers* case, this is not an instance where the stay of arbitration arises "merely from the possibility of an arbitrator's award which might purport to intrude into the school committee's inviolate authority." *Id.* See *School Comm. of Southbridge* v. *Brown, ante* 502, 506 (1978). Rather, in the present case, the very subject of the proposed arbitration — Gray's entitlement to the vacant principal's position — is a matter which, because of the school committee's exclusive and nondelegable power, cannot be submitted to the ultimate decision of an arbitrator. As such, the order granting the stay was timely and proper.

Indeed, if arbitration in this case were held to be permissible, the only action which would be deemed premature would be the filing of the grievance itself. G. L. c. 71, § 38, provides in part that "[n]o election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated . . . by the superintendent of schools." It is clear from the statement of agreed facts, as noted earlier in this opinion, that the superintendent, without recommending Gray, indicated to the school committee that it could offer the principal's position to Gray or reopen applications for the position. The school committee chose to reopen applications. The Appeals Court interpreted this to mean that the superintendent was willing formally to recommend Gray, but the school committee chose not to appoint him. *Berkshire Hills Regional School Dist. Comm.* v. *Gray, supra* at 687 n.2. We disagree with this interpretation. We do not think that on the agreed facts an inference can be drawn that the superintendent "was willing" to recommend Gray, or that the superintendent's equivocal response to the school committee constituted a nomination pursuant to G. L. c. 71, § 38. Furthermore, although the school committee chose at the time not to appoint Gray, and instead reopened applications and publicized the principal's position, such action was not in the nature of a final

decision rendered against Gray's application. Rather, the appointment process was simply maintained in its preliminary stages, and, although other applicants were solicited, the possibility, however remote, of Gray's eventual appointment still existed.

In conclusion, "G. L. c. 150C, § 2 (*b*) . . . authorizes a Superior Court judge to stay an arbitration proceeding, either commenced or threatened, if he finds '(2) that the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration. . . .' For the purposes of G. L. c. 150C, § 2 (*b*), we regard an agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration [such as the present one] as equivalent to the absence of a controversy covered by the provision for arbitration." *Berkshire Hills Regional School Dist. Comm.* v. *Gray, supra* at 690-691. *Dennis-Yarmouth Regional School Comm.* v. *Dennis Teachers Ass'n, supra* at 119.

We conclude that the order of the Superior Court granting the stay of arbitration was proper and should be affirmed.

*So ordered.*