19 Mass. App. Ct. 449 449

School Comm. of Peabody *v.* International Union of Elec., Radio, & Machine Workers.

SCHOOL COMMITTEE OF PEABODY *vs.* INTERNATIONAL UNION OF ELECTRICAL, RADIO, AND MACHINE WORKERS, AFL-CIO, LOCAL 294.

Essex. December 14, 1984. — March 6, 1985.

Present: KASS, CUTTER, & FINE, JJ.

*Arbitration,* Authority of arbitrator, School committee. *School and School Committee,* Arbitration, Appointment of assistant principal.

An arbitrator acting under a collective bargaining agreement between a union and a school committee exceeded his authority by awarding compensation to two unsuccessful candidates for a position as assistant to a high school principal, where neither of the candidates had theretofore been found by the school committee to be qualified for the position and where the award was not based upon any failure by the school committee to follow the procedures contained in the agreement, but, rather, involved the arbitrator's unauthorized consideration of the relative merits of the candidates. [452-455]

CIVIL ACTION commenced in the Superior Court Department on July 27, 1983.

The case was heard by *Paul G. Garrity,* J.

*Daniel B. Kulak,* Assistant City Solicitor, for the plaintiff.

*Kathryn M. Noonan* for the defendant.

CUTTER, J. In the spring of 1981 and again in 1982, the School Committee of Peabody (Committee), in an effort to meet the requirements of so-called Proposition 2½, St. 1980, c. 580 (later amended by St. 1981, c. 782), effected various changes in the Peabody school department.[1] Those now under discussion include the following situations.

(1) The committee eliminated the position of unit director — junior high school, held by James Greehy. In September,

[1] These changes are different from the changes considered in *School Comm. of Peabody* v. *Peabody Federation of Teachers Local 1289,* 17 Mass. App. Ct. 389 (1984).

1981, a vacancy for a position to be filled of "Temporary Assistant to the Principal, Peabody Veterans Memorial High School" (memorial high school) was posted. Greehy applied for the position, as did Joseph Guarante, who had less seniority than Greehy. The applicants were interviewed and the committee chose Guarante for the vacancy.

(2) Because of declining enrollments and fiscal constraints, an elementary school of which William Russell was principal was closed in 1982. Russell was removed from his position as principal and, as a nontenured teacher, then was dismissed. Russell in September, 1982, applied for the permanent position of assistant to the principal of the memorial high school, but Guarante was selected for the post. Russell had more seniority in the Peabody school system than either Greehy or Guarante.

Article IV of the collective bargaining agreement (the agreement), in force between the committee and the defendant (the union) at all times pertinent to the present controversy, contained the language set out in the margin.[2] Article VII of the

---

[2] "B. *Promotions.* "1. When a vacancy occurs in a position involving a ratio or differential and the Committee determines to fill it on a permanent basis, or in . . . case a vacancy in such position is anticipated to exceed six (6) months and the Committee determines to fill it on a temporary (acting) basis, notice of the vacancy shall be circulated to all employees by the principal in each building. . . . 4. *Where other factors are the same among a number of candidates, seniority in the Peabody School Department shall govern appointments . . .*" (emphasis supplied).

"E. *LAY-OFF.* In the case of lay-off in a classification of more than one individual, each lay-off shall be based on total seniority in that classification — i.e., the least senior individual will be laid off first."

"For the purpose of this section, the following positions shall be considered separate classifications.

1. Elementary Principals
2. Junior High Principals
3. Unit Director — Senior High
4. Unit Director — Junior High
5. School Adjustment Counselor
6. School Psychologist
7. Assistant Principals — Elementary

"This section will become applicable to other Unit B classifications when more than one individual is employed in that classification.

"In the event of a subsequent expansion, those individuals laid off will be recalled on the basis of seniority. Recall rights for individuals no longer

19 Mass. App. Ct. 449                     451

School Comm. of Peabody v. International Union of Elec., Radio, & Machine Workers.

agreement governed the question of grievances, i.e., complaints "that there has been a violation . . . or inequitable application of any of the provisions of" the agreement.[3]

Greehy and Russell filed a grievance with respect to the failure to appoint them, respectively, Greehy to the temporary vacancy and Russell to the permanent vacancy. In due course the matters were referred to an arbitrator. At hearings before him, the committee took the position that the grievances were not arbitrable because the right to make specific appointments was not properly the subject of collective bargaining. The union contended in effect that the whole controversy was arbitrable.

The arbitrator concluded (1) the matter was "both procedurally and substantively" arbitrable because it had "impact . . . upon the . . . rights of . . . Greehy and . . . Russell" and involved the procedure affecting specific appointment determinations as well as "the Committee's failure to adhere to the . . . procedural requirements of" art. IV of the agreement; (2) that the "committee did not violate . . . the . . . Agreement when it demoted and . . . dismissed . . . Russell"; (3) that the committee's action in appointing Guarante to the position of assistant to the principal of the memorial high school was a

---

employed in the system shall expire on the second anniversary of their leaving the system . . . ."

"F. *Demotions.* No principal, supervisor, assistant principal, or professional employee performing the duties of a principal, supervisor, assistant principal, by whatever title his position may be known, who has served in that position for over three years shall without his consent be demoted except for inefficiency, incapacity, unbecoming conduct, insubordination *or other good cause* . . ." (emphasis supplied).

[3] Article VII also provided for arbitration (American Arbitration Association) of grievances not settled at Level 1, the superintendent of schools, or Level 2, the school committee, and that the "decision of the arbitrator, *if made in accordance with his jurisdiction* and authority under" the agreement, "will be accepted as final by the parties . . . and both will abide by it" (emphasis supplied). Article X of the agreement provides that if "any provision of this agreement is . . . contrary to law, then such provision shall not be . . . enforced" but that all other provisions shall "continue in effect." Article XIII provides that the committee except "as specifically limited by" the agreement "reserves and retains all the authority, power, and rights provided to it by law."

violation of art. IV, § B(4), see note 2, *supra;*[4] (4) that Greehy (because Russell did not apply for the temporary appointment in 1981) should have been appointed to the temporary position for the 1981-1982 school year and is entitled to be made whole for the wages and benefits lost by failure to appoint him to the temporary position; and (5) that Russell should have been appointed (in view of his approximately twenty years in the Peabody school system) to the permanent position of assistant to the principal of the memorial high school, and is entitled to lost compensation (above other earnings) and restoration of seniority and other benefits lost.

Before confirmation of the award was sought, Russell had retired from the school system. Accordingly, the union did not ask for confirmation of the whole arbitrator's award directing Russell's appointment to the position of assistant to the principal of the memorial high school. Instead, the union moved only for partial confirmation of the award to make Russell whole for the compensation (above other earnings) and for benefits he would have received if appointed until his retirement. The union's motion came before a judge of the Superior Court, who on January 24, 1984, allowed partial confirmation of the award by endorsement on the motion.[5] From the order and the judgment (February 17, 1984), the committee has appealed.

Problems concerning the powers of school committees with respect to appointments of principals and other supervisory

---

[4] On this point the arbitrator said, "The evidence [before the arbitrator] . . . does not support the [c]ommittee's determination that Guarante was a more qualified candidate. In fact, both . . . Russell and . . . Greehy possessed equal, if not superior, qualifications for the . . . position." The arbitrator then proceeded to compare the qualifications of the three candidates.

[5] The endorsement read in part: "I agree with the analysis of the arbitrator . . . . [T]he [committee] is in clear violation of the provisions of the collective bargaining agreement . . . which it could have declined to enter into. When read with other S[upreme] J[udicial] C[ourt] de[cis]ions, especially the *School Committee of Newton* case (388 Mass. 557), *Berkshire Hills* (375 Mass. 522) is not controlling . . . . [The committee] had exercised its nondelegable authority in passing on the qualifications of . . . [Greehy and Russell] previously; reappointment on the basis of seniority pursuant to a collective bargaining agreement's terms is vastly different from appointment in the first instance which can't be delegated."

personnel continue to recur. The proper solution to some such problems remains uncertain under the decided cases. Unlike the trial judge, we are of opinion that this case largely is controlled by *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.,* 375 Mass. 522, 524-529 (1978). That decision, in a somewhat comparable factual situation, deals (at 525) with an area of "exclusive managerial prerogative entrusted to a school committee by G. L. c. 71" which is "not subject to delegation, interference or control by collective bargaining agreements or provisions therein for arbitration."[6] Other decisions dealing with nondelegable functions of school committees are collected in *School Comm. of Newton* v. *Labor Rel. Commn.,* 388 Mass. 557, 563 & n.4, which (at 564 and n.5) also lists decisions in which *procedural* provisions of collective bargaining agreements have been sustained even though, in some degree, they may have "related to exclusive nondelegable functions of a school committee." See, e.g., *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 213 (1982), where "the *procedures* [emphasis original] set forth in a collective bargaining agreement," including those dealing with "the timing of layoffs and the number and identity of the employees affected are proper subjects of collective bargaining."

We think that the arbitrator was authorized to consider and decide whether the laying off of Russell was in compliance with *procedures* contained in the agreement and whether the committee had taken reasonable steps to ensure consideration in good faith of the qualifications of Russell and Greehy to fill, permanently or temporarily, a vacant position in the school system for which they met the posted qualifications. There is no contention here that there was any failure to follow appropriate procedures with respect to Russell's layoff and dismissal. The problem, however, arises with respect to the arbitrator's decision on Russell's recall to fill a position which (so far as this record shows) he and Greehy had not previously occupied,

---

[6] In the *Berkshire Hills* case (at 526), after a review of earlier decisions, it was said, "school committees have an affirmative duty in the interest of their constituency to select personnel best suited for management positions."

and for which the committee theretofore had not found them qualified. Compare *Bradley* v. *School Comm. of Boston,* 373 Mass. 53, 57-60 (1977), where it was held that an arbitrator could direct compliance with past practices (protected by the collective bargaining agreement) for the *transfer* of an incumbent principal (already accepted as qualified as a principal by the school committee) to a vacant principal position, apparently of the same level in the school system as the position already held by the incumbent principal.[7]

Article IV, § B(4), contained (by its very terms) a judgment factor in the words, "[w]here other factors are the same among a number of candidates." We perceive nothing in the agreement[8] which requires the committee to treat all principals, assistant principals, and other supervisors, regardless of level (e.g., elementary, secondary, high school), as essentially fungible and interchangeable, beyond the particular classification (under art. IV, § E, note 2, *supra*) to which any particular school system employee may belong. In any event, on a vacancy at the senior high school level, it has not been shown that the committee has surrendered and delegated to any arbitrator its prerogative of choice, granted to it by G. L. c. 71.

The matter is not free from doubt, but we think that the arbitrator by his decision has intruded "into the . . . committee's exclusive domain." See *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 114 (1977). The arbitrator (see note 4, *supra*) has purported himself to decide the relative qualifications of Russell, Greehy, and Guarante. That decision, as we view this record, was one for the committee.[9]

---

[7] If the vacancy here was a position for which either of the rejected applicants previously had been found qualified by the committee, it may be that the provisions of art. IV, § B(4), could have been applied on a strict seniority basis.

[8] The later provisions of art. IV, see note 2, *supra,* do not give any clear indication of the relative importance of the positions (certainly not an all-inclusive list) classified in art. IV, § E. The several classifications are different from one another. An applicant trained to work with children in an elementary school, for example, might be regarded as not suitable for work with high school students and vice versa.

[9] As all three applicants were already employees of the Peabody school system, there is no occasion on this record to consider whether the committee

The union contends that the arbitrator's award of compensation to Russell and Greehy may stand apart from his erroneous intrusion into the area of the committee's prerogative. He treated the committee's failure to appoint either of the two rejected applicants as a violation of art. IV, § B(4). The arbitrator has mentioned no other violation of the agreement by the committee. The case, in this respect, is unlike *School Comm. of New Bedford* v. *New Bedford Educators Assn.,* 9 Mass. App. Ct. 793, 798-799, 801-802 (1980), where the opinion also rested in part on a procedural violation of rules regarding posting of vacancies (in the course of the appointment made by that school committee). This arbitrator's awards of compensation were based very directly on his unauthorized conclusion that Greehy and Russell (and not Guarante) — on their respective merits — should have been appointed. We think that the awards as a whole fall. Compare *School Comm. of Lynnfield* v. *Trachtman,* 384 Mass. 813 (1981).

The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion. If the union within sixty days after the receipt of the rescript in the Superior Court does not indicate in written form some proper basis for remanding the case for further arbitration, the award is to be vacated and judgment is to be entered (a) vacating the award, and (b) for the committee.

*So ordered.*

could subject to collective bargaining and arbitration a requirement that all appointments be made from within the Peabody system.