SCHOOL COMMITTEE OF SPRINGFIELD *vs.* SPRINGFIELD ADMINISTRATORS' ASSOCIATION. No. 92-P-1128. February 22, 1994. *Arbitration*, Authority of arbitrator, School committee. *School and School Committee*, Arbitration, Collective bargaining, Appointment of personnel.

In a considerable line of cases, including *School Comm. of Holbrook* v. *Holbrook Educ. Assn.*, 395 Mass. 651, 656 (1985), *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 806 (1980), and *School Comm. of Peabody* v. *International Union of Elec., Radio, & Mach. Wrkrs.*, 19 Mass. App. Ct. 449, 453 (1985), it has been held that an arbitrator may not order the appointment of a particular person to a particular academic position in a school system. This is because a school committee may not be relieved of — indeed it may not bargain away — its statutory responsibility, conferred by G. L. c. 71, §§ 37 and 38, to appoint teachers and managers of teachers, such as a principal. *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.*, 375 Mass. 522, 527 (1978).

Springfield Administrators' Association (the "union") argues that the general principle of dominant school committee appointing authority does not apply in the case at hand because the position to which the union and the arbitrator say the grievant Alan O'Dell is entitled constitutes no more than a lateral assignment of O'Dell from one position, for which the school committee has previously found him qualified, to a position on a like plane and of like kind. It would be, the union suggests, like moving a third-grade teacher from a classroom that has been closed down to another third-grade classroom where there is a vacancy. For the proposition that seniority preference in a collective bargaining agreement for a transfer of that sort may bind a school committee without trespassing on its statutory prerogatives, the union cites *Bradley* v. *School Comm. of Boston*, 373 Mass. 53, 59

(1977). See also *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 564 n.5 (1983).

We turn to the facts. In a collective bargaining agreement (agreement) for the period July 1, 1988, through June 30, 1991, the committee and the union included a provision which prescribed that, if a position of a director or supervisor were eliminated, the committee would offer the affected director or supervisor an open position as a director or supervisor.[1] The obligation to make the open position available was hedged with the condition that the displaced individual was to have the certification, experience, and training for the newly open position.

O'Dell, a long-time teacher of industrial arts, in December, 1988, was promoted to director of occupational education, an administrative position. In the spring of 1990, that post was eliminated for budgetary reasons, effective June 30, 1990. Shortly after O'Dell received notice of the abolition of his position, the Springfield school department announced a vacancy in the position of supervisor-chapter 74[2] vocational programs. O'Dell claimed that post on the basis of the collective bargaining agreement; i.e., he had been displaced from a supervisory position and was entitled to be slotted in the next available supervisory position for which he met the stated qualifications. The school had posted certain prerequisites as to education (degree requirements), certification by the State Department of Education, and experience. The superintendent of schools interviewed O'Dell but did not offer the job to him. The committee returned O'Dell to the teaching ranks, provoking a grievance which reached and proceeded through the arbitration stage.

As the arbitrator saw the dispute, the decisive provision in the collective bargaining agreement, art. XIX(8), contemplated application of a "minimal qualifications" standard to O'Dell's application for the supervisor-chapter 74 vocational programs. Whether O'Dell would be effective in the job was regarded by the arbitrator as beside the point. "We must put aside here," she wrote in support of her award, "our natural inclination to declare that any vacancy ought to be filled by the best possible available candidate."

We are of opinion that the arbitrator was mistaken in placing the open supervisor-chapter 74 vocational programs job on the same level as the post previously held by O'Dell, director of occupational education. The new position, the superintendent thought, required diplomatic skills in

---

[1] Article XIX, Reduction in Force. "8. Should Directors' and Supervisors' positions be eliminated the School Committee agrees to offer the affected director and/ or supervisor an open position as a Director and/or Supervisor providing an individual has the certification, experience and training for such a position. Should no such position exist, the affected director/supervisor is eligible to displace/replace a less senior (Unit B time) director/supervisor as long as he/she is certified and has previous tenure in that particular director/supervisor position."

[2] The chapter reference presumably is to c. 74 of the General Laws, which has to do with vocational education.

dealing with his own views and those of the principal of the Vocational Technical High School. It would be necessary for the c. 74 supervisor to stand in the middle of competing interests of the State, the principal, and the superintendent, and to take positions distasteful to some, or all, of those competing interests without offending the players. O'Dell, the superintendent thought, had not displayed the necessary qualities in the past or in his interview. It seems to us apparent that the new supervisor-chapter 74 job involved duties which varied in certain material respects from O'Dell's previous administrative job. In that event, the committee could not, on the basis of the cases cited in the first paragraph of this opinion, contract for a binding seniority preference. The committee is bound to exercise its statutory duty of appointment under G. L. c. 71, §§ 37 and 38.

The case came before the Superior Court judge on cross motions for summary judgment. The judge did not vacate the arbitrator's award but, rather, ordered that the superintendent nominate O'Dell for the supervisor-chapter 74 position; the school committee was then to evaluate Mr. O'Dell and to decide whether to appoint him. We do not think the superintendent is obliged to propose as a candidate for that position a person whom he does not recommend. The school committee's motion for summary judgment should have been allowed; a judgment shall be entered vacating the arbitrator's award.

*So ordered.*

*Ira Fader* for the defendant.
*Kathleen T. Breck*, Acting Associate City Solicitor, for the plaintiff.