CARTER COUNTY BOARD OF EDUCATION, Plaintiff–Appellee,

v.

CARTER COUNTY EDUCATION AS-SOCIATION and Chele Dugger, Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

May 14, 1996.

Application for Permission to Appeal Denied by Supreme Court Oct. 7, 1996.

Charles Hampton White, Richard L. Colbert, and Rebecca Wells–Damaree, with Cornelius & Collins, of Nashville, Tennessee, for Appellants.

John K. Banks and Thomas R. Banks, with Banks and Banks, of Elizabethton, Tennessee, for Appellee.

OPINION

CLIFFORD E. SANDERS, Special Judge.

The pivotal issue on this appeal is whether a county school board which has entered into a collective bargaining agreement with the teachers' union has the non-delegable right to employ the principal of a school, or is the action of the school board subject to binding arbitration at the behest of the union and a member seeking the position. We hold it is a non-delegable duty of the board not subject to binding arbitration, and affirm the trial court.

The Plaintiff–Appellee, Carter County Board of Education (Board), was created pursuant to TCA § 49–2–101, et seq., and possessed all the powers and responsibilities to operate the Carter County school system as set forth in the statute. Defendant–Appellant Carter County Educational

Association (Association) represents the professional employees of the Board of Education pursuant to TCA § 49-5-603. The Board and the Association entered into a collective bargaining agreement in June, 1992, effective from July 1, 1992, to June 30, 1995, pursuant to TCA § 49-5-601, et seq.

In July, 1994, Mr. Ernest Rasar, superintendent of Carter County schools, posted a notice of a vacancy for the principalship of Hampton High School in Carter County. Three teachers in the Carter County school system filed applications for the position—the Defendant–Appellant Chele Dugger, Jeff Aldridge, and John Hyatt.

On or about September 8, 1994, upon the recommendation of Superintendent Rasar, the Board of Education elected Mr. Aldridge as principal of Hampton High School. Ms. Dugger timely filed a grievance challenging the action of the Board in electing Mr. Aldridge to the principalship, alleging he had less seniority and was less qualified than she. Mr. Rasar denied the grievance and the Board met and reaffirmed its election of Mr. Aldridge as principal of the school.

The Association and Ms. Dugger requested final and binding arbitration pursuant to the voluntary rules of the American Arbitration Association. The Board rejected the request. The Board was later informed by the American Arbitration Association it would proceed with the arbitration unless "stayed by court order", which precipitated this litigation.

The Board of Education filed suit against the Association and Chele Dugger seeking a declaratory judgment pursuant to TCA § 29-14-102, asking the court to declare the Board of Education had the exclusive right and duty to employ the principal of the school and such right and duty was not subject to collective bargaining and that the duty to employ the principal of the school was a non-delegable duty held by the Board of Education. The Board asked the court for injunctive relief, including a temporary restraining order restraining the arbitration proceeding.

The court issued a temporary restraining order and upon the trial of the case found the issues in favor of the Board of Education. The court filed a Memorandum Opinion & Order in which the conclusion and order of the court, as pertinent, was as follows: "The duty of the Carter County Board of Education to elect a principal set forth in T.C.A. § 49-2-203(a)(1) is a non-delegable duty. The mandatory performance of that statutory duty is not subject to arbitration. It is a right and responsibility 'preserved' to the Board (T.C.A. § 49-5-604(a)), and the scope of any collective bargaining agreement cannot contain any proposal contrary to that right. (T.C.A. § 49-5-612(a)(3)).

"The defendants, Carter County Education Association and Chele Dugger, are **ENJOINED** from seeking arbitration of the decision of the Carter County Board of Education in its selection of principal for Hampton High School."

The Association and Ms. Dugger have appealed, saying the court was in error in holding the duty of the Board of Education to elect a principal of the school was a non-delegable duty and not subject to arbitration and also the court erred in failing to consider the application of the Tennessee Uniform Arbitration Act. We cannot agree, and affirm for the reasons hereinafter stated.

All of the rights and privileges of the professional employees of the Board of Education, as they relate to organizing, negotiating, and collective bargaining agreements, are governed by TCA § 49-1-101, et seq. TCA § 49-5-603 specifically gives the professional employees "the right

to self-organization...through representatives of their own choosing", etc. TCA § 49–5–604(a), as pertinent, provides: "Those rights and responsibilities of boards of education, superintendents and professional employees as contained in this title [49] are not statutorily modified or repealed by this part." TCA § 49–5–611 set forth a limited number of issues which are subject to negotiations between the Board of Education and the professional employees' organization as follows:

**Scope of negotiations.**—(a) The board of education and the recognized professional employees' organization shall negotiate in good faith the following conditions of employment:

(1) Salaries or wages;

(2) Grievance procedures;

(3) Insurance;

(4) Fringe benefits, but not to include pensions or retirement programs of the Tennessee consolidated retirement system;

(5) Working Conditions;

(6) Leave;

(7) Student discipline procedures; and

(8) Payroll deduction.

(b) Nothing shall prohibit the parties from agreeing to discuss other terms and conditions of employment in service, *but it shall not be bad faith as set forth in this part to refuse to negotiate on any other terms and conditions.* Either party may file a complaint in a court of record of any demands to meet on other terms and conditions and have an order of the court requiring the other party to continue to meet in good faith on the required items of *this section only.* (Emphasis ours.)

TCA § 49–5–612(a), as pertinent, provides:

(a) The scope of a memorandum of agreement shall extend to all matters negotiated between the board of education and the professional employees' organization; provided, that the scope of such agreement shall not include proposals contrary to:

(1) Federal or state law or applicable municipal charter;

(2) Professional employee rights defined in this part; and

(3) Board of education rights contained in this title.

Section (c) further provides:

(c) A board of education and a recognized professional employees' organization who enter into an agreement covering terms and conditions of professional service and/or other matters of mutual concern may include in such agreement procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application or violation of such agreement.

TCA § 49–2–203(a)(1) provides:

(a) It is the duty of the local board of education to:

(1) Elect principals, supervisors, teachers, educational assistants, attendance officers, clerical assistants and other employees authorized by this title, and to fix salaries for such authorized positions according to the provisions of this title;....

■ A review of the statutory provisions quoted above makes it clear that only the Board of Education has the right or authority to fill the vacancy for the principalship of Hampton High School. It is also made clear by the statutory provisions that the issue of filling the principalship is not an issue subject to collective bargaining. And even if such an issue were included by the mutual consent of the parties into the collective bargaining

agreement, it would be in direct violation of TCA § 49–5–611(a) and § 49–5–602(a)(3). It would also be a non-delegable authority not subject to binding arbitration and in violation of § 49–2–203(a)(1) which confers the duty on the local board of education to elect principals, supervisors, etc.

The issue in the case at bar appears to be a case of first impression in this jurisdiction. We have been cited to no cases in this jurisdiction, nor have we found any, which directly address the issue before us. It appears, however, to be a universal rule that issues within the prerogative of management are not proper subjects for collective bargaining or negotiation. 84 A.L.R. 3d 242 (1978), under the subject of *"Bargainable or Negotiable Issues in State Public Employment Labor Relations"* deals with a broad variety of issues which have been held to be bargainable and non-bargainable. On page 255, "II General limitations on scope of bargaining or negotiation" states:

[a] **Generally**

Perhaps the single greatest, and almost universally recognized, limitation on the scope of bargaining or negotiation by state public employees is the concept of managerial prerogative as it has developed in the public sector. In essence, the concept creates a dichotomy between "bargainable" issues, that is, those issues which affect conditions of employment, and issues of "policy" which are exclusively reserved to government discretion and cannot be made mandatory subjects of bargaining. The courts in the following cases have recognized the rule that issues which fall within the category of management prerogatives are not proper subjects of bargaining or negotiation.

Cases from 13 states are cited which are supportive of the holding.

The chancellor filed an excellent memorandum opinion in which he quoted from, and relied upon as supportive of his holding, the case of *Berkshire Hills Regional School District Committee v. Berkshire Hills Education Association, et al.,* 375 Mass. 522, 377 N.E.2d 940 (1978). As pertinent, he said: "The Board cited authority in support of non-arbitrability involving a principal, *Berkshire Hills Regional School District Committee v. Berkshire Hills Education Association, et al.,* 375 Mass. 522, 377 N.E.2d 940 (1978); a supervisor of vocational programs *School Committee of Springfield v. Springfield Administrators' Association,* 36 Mass.App.Ct. 916, 628 N.E.2d 33 (1994); and other cases involving teachers (citations omitted).

"In *Berkshire Hills, supra,* the selection of the principal was by a school committee upon recommendation by the superintendent. One Gray, who had applied, but was not appointed, went through the grievance procedure the first three steps, and then demanded arbitration, the fourth step. The school committee sought and was granted a stay of arbitration. The trial court held that the appointment of principal was not properly arbitrable, notwithstanding that procedure for filing 'every vacancy in any supervisory position or other professional position . . .' was covered by the collective bargaining agreement. The school committee was operating under a statute that gave it authority to appoint school principals and to fix their compensation. The Supreme Judicial Court of Massachusetts agreed with the trial court, reasoning as follows:

" '[W]e think the power to appoint a principal comes within the area of the school committee's nondelegable, managerial prerogative over educational policy, which is not a proper subject for collective bargaining or arbitration. As

noted by the Appeals Court, "[a] principal is charged by G.L.c. 71, § 59B, with the duty to 'plan, manage, operate and evaluate' a school's educational program. He is the senior management officer of the school and of the teaching staff of the school, subject only to the superintendent and the school committee itself. He is charged with responsibility for the day-to-day conduct of the school's educational program." (citation omitted) As such, "it is manifest that the appointment of a principal [falls] within the school committee's exclusive and nondelegable powers." ' *Berkshire Hills, etc.,* 377 N.E.2d at 943."

An examination of the statutory duties of our school principals indicates they are broader than the statutory duties of the Massachusetts school principals. TCA § 49-2-303(a)(3)(b), as pertinent, states:

(b) It is the duty of the principal to:

(1) Supervise the operation and management of the personnel and facilities of the school or schools of which he is principal as the local board of education shall determine;

(2) Assume administrative responsibility and instructional leadership under the supervision of the superintendent and in accordance with the written policies of the local board of education for the planning, management, operation and evaluation of the education program of the schools to which assigned;

(3) Submit recommendations to the local superintendent regarding the appointment, assignment, promotion, transfer and dismissal of all personnel assigned to the school or schools under his care; .... ((4)(5)(6)(A)(I–V) omitted.)

 Appellant also argues the chancellor erred in his failure to consider and apply the provisions of the Tennessee Uniform Arbitration Act, TCA § 29-5-301, et seq. The Appellant raises this issue for the first time on appeal, which it is not at liberty to do. *Airline Construction, Inc. v. Barr, et al.,* 807 S.W.2d 247 (Tenn.App. 1990); *Atkins v. Kirkpatrick, et al.,* 823 S.W.2d 547 (Tenn.App.1991); *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147 (Tenn.1991). There is also another compelling reason the Tennessee Uniform Arbitration Act is not applicable in the case at bar—It is specifically excluded from the Education Professional Negotiations Act, TCA § 49-5-602.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellants. The case is remanded to the trial court for any further, necessary proceedings.

HERSCHEL P. FRANKS and DON T. McMURRAY, JJ., concur.